175 So. 394

## ALABAMA COLLEGE v. HARMAN.

### 7 Div. 461.

Supreme Court of Alabama.

June 14, 1937.

Rehearing Denied June 24, 1937.

Horace C. Wilkinson, of Birmingham, for appellant.

L. H. Ellis, of Columbiana, for appellee.

KNIGHT, Justice.

A bill for declaratory judgment.

The appellant is a corporation, incorporated for educational purposes by an act of the General Assembly of Alabama, Approved February 21, 1893 (Gen.Acts, 1892–93, p. 1002), and its principal place of business is at Montevallo, in Shelby county, Ala. Since its original incorporation, the name of appellant has been changed several times. When first incorporated, its corporate name was the Alabama Girls' Industrial School. By the original act of incorporation, it was provided in section 4 thereof (page 1003):

"That the board of trustees of said institute, and their successors in office be, and the same are hereby declared to be a body politic and corporate, and shall have a common seal, shall sue and be sued, contract and be contracted with, and may own, purchase, sell and convey property, both real and personal."

By section 9 of the original act (page 1005) it was provided:

"That as it is the object of this act to establish said industrial school for white

girls, with as small an outlay, annually as is consistent with the object to be attained, the said trustees shall prepare a general plan of said school, together with all the necessary departments, dormitories and out houses; also an estimate of the cost of necessary school furniture, including cost of buildings and department appliances, and shall build and establish in any one year, unless said building shall be secured by donation to the State, only such houses, dormitories and departments as they may deem for the best interest of said institution and of greatest practical importance."

While there have been a number of amendatory acts, the Legislature, with painstaking care, preserved and confirmed unto the corporation all the rights and privileges granted in the original charter.

By an act of the Legislature, approved September 8, 1923 (Acts 1923, p. 255), the name of the corporation was changed to Alabama College, and by that name, it was declared to be, "and shall remain a body corporate" with the right to sue and contract, acquire and hold real and personal property, and have and exercise all the powers of a corporation established to carry on a state educational institution of higher learning, and shall succeed to all the rights, privileges, emoluments, benefits, interest, and titles heretofore at any time vested in said "Alabama Girls' Industrial School," the "Alabama Girls' Technical Institute," and "Alabama Technical Institute and College for Women," respectively.

Section 2 of the same act (page 257), as did former acts, placed the management and control of the corporation in a board of trustees, and provided for their appointment or selection.

It is a matter of common knowledge that this school has, from a very insignificant beginning, grown and developed into one of the state's greatest educational institutions.

It appears from the bill that the college is badly in need of and proposes to erect a co-operative house dormitory, "designed to house one hundred and fifty-six students and provide them with light housekeeping arrangements; that the erection and construction of said house dormitory is absolutely essential to enable said corporation to carry out the purposes for which it was organized"; that for the lack of such accommodations more than a hundred and fifty students, who desire to enter the institution, cannot do so.

It further appears from the bill that the trustees on May 28, 1936, at a regular meeting of the board, unanimously adopted a resolution to proceed with the construction of a co-operative house dormitory, designed to house 156 students, as soon as financial arrangements could be made.

It appears from the averments of the bill that the cost of such a dormitory will be approximately $200,000; that the corporation proposes to finance the construction of the dormitory by issuing its bonds in the sum of $200,000, bearing interest at the rate of 4 per cent. per annum, maturing serially. The complainant—corporation—proposes to secure the payment of the bonds, as they mature, by pledging all or so much of the student fees that it collects, together with rentals it will receive from said dormitory, "to pay the interest on said bonds and to amortize said loan and to meet the annual retirement." This pledge to also include fees to be collected from students attending summer schools, if necessary.

It also appears from the bill that the corporation proposes to build said dormitory on lands now owned by it, which were acquired with funds furnished it by the state of Alabama, or if this land is not suitable for the purpose, then the corporation proposes to erect the dormitory on adjacent land to be purchased by it with a part of the proceeds of said bonds. The complainant—corporation purposes also to execute a mortgage on the land on which the dormitory will be erected "as further and additional security for the payment of the principal and interest on said bonds."

It appears that the complainant—corporation, to carry out the general purposes above stated, and pursuant to duly adopted resolutions of the board of trustees, has caused the bonds to be prepared, and is awaiting the signature of the respondent, president of said corporation, his signature being essential to the validity of said bonds, and their due issuance. That said respondent declines to execute said bonds as president of said corporation, and declines to execute any written instrument pledging the student fees and dormitory rentals, because he is advised that he has no lawful right or legal authority to do so. The said respondent also declines to execute a mortgage or deed of trust, either on property now owned by Alabama Col-

lege, on which it is proposed to erect the said dormitory, or on property which the complainant—corporation proposes to purchase with a part of the proceeds of said bonds, upon the ground that the Alabama College has no lawful right or legal authority, either to pledge the student fees, or dormitory rentals to pay interest and principal on said bonds, or to secure said bonds by the execution of a mortgage or deed of trust on the property owned by Alabama College, or on lands to be acquired with a part of the proceeds of said bonds.

The bill concludes: "And your petitioner avers that unless said A. F. Harman is required to execute said bonds and said written instrument, that it will be unable to obtain the funds with which to erect said co-operative house dormitory, and will be unable to fully carry out the objects for which it was organized."

The prayer of the bill is for a declaratory judgment, adjudging it to be the duty of the respondent, "as President of Alabama College, a corporation, to affix his signature, as President of said corporation," to said bonds, and to affix his signature to an instrument in writing pledging certain student fees, collected by said Alabama College from students attending said institution, and all rentals collected from said dormitory, to the payment of interest and principal on said bonds; and to affix his signature to a mortgage or deed of trust on the real property on which the dormitory may be erected. And that the court by mandamus, or other appropriate writ, enforce the performance of said duties.

Dr. Harman answered the bill admitting it was his duty, as president of the corporation, to execute the bonds, the written instrument of pledge, and the mortgage, if it was lawful for him to do so, but he, upon advice of counsel, was of the opinion the complainant—corporation was without lawful right to issue said bonds, and to pledge, as security therefor, the designated future revenues of the college, and to mortgage any of its real estate, whether then owned, or to be acquired with funds to be derived from the sale of said bonds.

The court on submission held that the complainant had the legal right to construct the said dormitory, and to issue bonds to finance the construction; the right to execute a mortgage or deed of trust upon the property upon which the dormitory may be situated, in the event it is erected on land now belonging to said college, for the purpose of paying the principal and interest on said bonds; and that the complainant, for the purpose of securing a building site, had the right to purchase the necessary land, and to pay for such land out of the proceeds of said bonds, and it had the right to execute a mortgage or deed of trust on such land for the purpose of securing payment of said bonds. But that complainant had no right or power to pledge as security for the payment of said bonds any student fees or dormitory rentals collected by it.

From this decree, both complainant and respondent have filed appeals to this court.

The legal status of this complainant has heretofore received the attention of this court. Alabama Girls' Industrial School v. Reynolds et al., 143 Ala. 579, 42 So. 114, 117; Alabama Industrial School v. Adler et al., 144 Ala. 555, 42 So. 116, 117, 113 Am.St.Rep. 58.

In the Reynolds Case, supra, this court held that this corporation was a mere agency of the state, instituted and maintained for the purpose of providing for the girls of the state an education, and that all the property interest in it is owned by the state. This being true, it was held, that any action or suit against the institution would be really and substantially one against the state, and that the institution must be held to be protected against all actions or suits where the state is protected. This court held in that case that the institution was not subject to suit, notwithstanding the act of incorporation contained an express authorization that it may be sued.

This court in the case of Alabama Industrial School v. Adler et al., supra (same corporation as here complainant), reaffirmed the holding in the Reynolds Case. Adler in that case brought suit against the institution to recover "$2,500 of advance money paid by Adler & Co., * * * on a contract entered into in the name of said agent [of the institution] * * * for the purchase from it of certain lands donated to [the institution] by Congress." There was judgment in the lower court for plaintiff. On appeal, this court reversed the judgment of the lower court, holding that the corporation was not subject to suit, and that consequently the judgment was void.

In the case of White v. Alabama Insane Hospital, 138 Ala. 479, 35 So. 454, the following observation was made: ·

"The power of the state to create a body corporate as its agent to carry on certain special kinds of work for its benefit or for the public interest cannot be doubted. And where this power is exercised, the institution thus established is in every sense a state institution and belongs to the state, although managed and its affairs administered under the supervision of trustees of the body corporate created for that purpose. Who doubts the right of the state to create a corporation for the management of an insane hospital, or a deaf and dumb asylum, or an institution of learning? And where they are created, who has the property interest in these institutions? Clearly the state. In the exercise of its right of sovereignty it established them for public purposes; it donates the property or the funds to purchase it upon which they are built, and supplies the means by which they are maintained and operated. They have no capital stock, or shares held by individuals. Indeed, they have no membership or stockholders. They are not created for profit, but solely as public benefactors, the beneficiaries being the people who compose the state. Should the state, through its legislative department, see fit to repeal the act of incorporation and provide some other or different agency or trustee to manage and control such an institution, where is the obstacle in its doing so? It would clearly violate no contractual obligation, or otherwise infringe upon the property rights of any person, for no individual has any personal pecuniary interest in the incorporation as such; therefore no right to complain of its destruction."

We fail to find in the act of the Legislature creating the complainant—corporation, or in any of the acts amending the original act, any express power to borrow money, or any power to pledge the revenues of the institution, or any power to execute a mortgage, or deed of trust on any of its properties. Nor do we find any implied power in this corporation to do such acts.

This court, in the case of Allen v. Intendant & Councilmen of LaFayette, 89 Ala. 641, 8 So. 30, 32, 9 L.R.A. 497, in an exhaustive opinion by Justice McClellan, later Chief Justice, made the following important pronouncement upon the power, or rather limit of power, of a municipal corporation:

"Its charter nowhere expressly confers power on the corporate authorities to borrow money for any purpose, or under any circumstances. And whatever may be the decisions of other courts, and however variant may be the judicial opinion in other jurisdictions, on the point, the doctrine is thoroughly well settled in Alabama that, the power to borrow money is not incident to municipal corporations, and that, if it exists in any instance, it must be by the force of express legislative grant, or at least by force of legislative investment of power coupled with the imposition of duties which are incapable of exercise and performance without the borrowing of money. We need not enter upon a discussion of the reasons which underlie this doctrine. They are many and cogent, and most clearly stated by Judge Dillon, Justice Bradley, and in former adjudications of this court which establish the proposition. 1 Dill.Mun.Corp. §§ 117, 126; Mayor, etc., of Nashville v. Ray, 19 Wall. [468], 475 [22 L.Ed. 164]; Simpson v. Lauderdale County, 56 Ala. 64; Wetumpka v. Wetumpka Wharf Co., 63 Ala. 611."

■ Counsel for appellant has pressed upon our attention the holdings of this court in the cases of Kelly v. Trustees of Alabama C. R. R. Co., 58 Ala. 489, Talladega Ins. Co. v. Peacock, Adm'r., 67 Ala. 253, and Taylor v. Agricultural & Mechanical Ass'n of West Alabama, 68 Ala. 229, as authorities holding that corporations have ordinarily the right to borrow money, and to secure it by mortgage upon its property. These cases were dealing with private corporations, and not public or quasi public corporations, created by the state, and intended as an agency of the state, to enable it to carry out governmental purposes. Consequently, being mere agencies of the state, created by statute, their authority must be found in the law creating them, or thereafter conferred upon them, unaided by any common-law rights inhering in a strictly private corporation.

■ There is nothing in the case of Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774, or in the case of Turk v. County Board of Education of Monroe County, 222 Ala. 177, 131 So. 436, which in any wise contravenes the general principle that a municipal corporation, or a public, or quasi public cor-

poration, cannot, without express legal authorization borrow money, and pledge its property as security therefor.

This court, by a four to three decision upheld the constitutionality of the act creating the Alabama State Bridge Corporation, and sustained the validity of the bonds issued by this corporation for the construction of certain bridges, upon the theory that the bonds issued pursuant to said act were not, and could not become, debts of the state, or chargeable upon any of its property. Judge Sayre, in discussing this phase of the case, used the following strong language: "If these special funds should for any reason fail of realization, or should be exhausted in execution of the primary purposes for which they may be raised, nothing will be left to creditors advancing money on the faith of the bonds authorized but the right to collect tolls. There is no promise on the part of the state to pay in any event; there is no pledge that there will be a surplus of any fund; there is no pledge of the general credit of the state; there will be no debt within the meaning of section 213." Alabama State Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695, 699.

In that case there was express legislative authorization to do the things the Alabama State Bridge Corporation undertook to do. Here there is no such attempted legislation, even if such legislation would be within legislative competence.

■ We are thus at the conclusion that the complainant—corporation was, and is without power or right to issue the bonds of the corporation, with pledge of the student fees, or any part of them, and to execute the mortgage to secure said bonds.

It follows, therefore, that Dr. Harman, the respondent, properly declined to sign said bonds, and likewise properly declined to sign any instrument pledging the student fees, or any part of them, and the rentals to be collected from said dormitory, when erected, and also properly declined to execute the mortgage, or deed of trust, as the complainant-corporation was without authority in law to borrow said money, and to make the pledges and mortgage.

A judgment will here be entered affirming the judgment of the circuit court in so far as it held that said Alabama College had no legal right, power or authority to pledge, as security for the bonds sought to be issued to finance the construction of said dormitory, the student fees of any kind, and dormitory rentals to be collected from students who might occupy said dormitory.

And a judgment will be here rendered reversing the decree of the circuit court in so far as it decreed that Alabama College had the legal right, power, and authority to construct said cooperative house dormitory, and to issue bonds to finance the construction thereof, and reversing said decree in so far as it held that Alabama College had the legal right, power, and authority to execute a mortgage or deed of trust upon which said dormitory might be constructed, in the event it is erected on land now belonging to said institution; also reversing the decree in so far as it held that Alabama College had the legal right to purchase lands for a site for said building, and to pay for same out of proceeds of said bonds. And a decree will be here rendered denying all such right, power, and authority to the said Alabama College.

Affirmed on direct appeal, and reversed and rendered on cross appeal of cross-appellant, Dr. Harman.

Affirmed in part, and reversed and rendered in part.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

### On Rehearing

KNIGHT, Justice.

On application for rehearing our attention has been called for the first time to an act of the Legislature of Alabama, approved September 13, 1935, Gen.Acts 1935, p. 1064, entitled:

"An Act

"To provide authority for the State Board of Education and/or the trustees of all State Institutions, where education is a part of the program of the Institution, to borrow money from Federal Agencies for the erection of buildings, beautification of grounds, and the erection and maintenance of swimming pools at the several State Institutions; to authorize the issuance of bonds, warrants or other evidences of debt for the repayment of the amount borrowed with interest at a rate not to exceed four per cent semi-annually, and to pledge therefor the fees from students to be levied by the Institution for

which the money is borrowed, and any other moneys not appropriated by the State to said Institution; to make such bonds, warrants or other evidences of debt not an obligation of the State and not payable out of any moneys provided by the State."

All that need be said is that the bill, as filed in this case, clearly does not seek a declaratory judgment or decree as to the right of the complainant to borrow money from the federal government, or from any federal agency, as provided in said act. On the contrary, it seeks a declaratory judgment as to whether it had power generally to borrow the money and pledge the properties of said institution for its payment.

As to all other questions argued by appellant, in his brief filed on rehearing, we find nothing to convince us that we were in error in the opinion heretofore rendered. It will stand, and the application for rehearing will be overruled.

Application overruled.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.