183 So. 268

### KELLER v. STATE BOARD OF EDUCATION OF ALABAMA et al.

#### 3 Div. 274.

Supreme Court of Alabama.

Sept. 7, 1938.

Lawrence H. Lee, of Montgomery, for appellant.

402

A. A. Carmichael, Atty. Gen., and Silas C. Garrett, III, and Wm. H. Loeb, Asst. Attys. Gen., for appellees.

Geo. W. Meuth, of Atlanta, Ga., Regional Counsel, Federal Emergency Administration of Public Works, amicus curiæ.

THOMAS, Justice.

This was a suit for declaratory judgment. The bill was filed by Dr. J. A. Keller as President of the State Teachers College of Florence, Alabama, to determine the right of the State Board of Education of Alabama, the governing body of the institution, to borrow an amount not to exceed fifty-five thousand dollars from the Federal Emergency Administration of Public Works for the construction and equipment of a physical education building, swimming pool, etc.; and for that purpose to issue bonds or warrants bearing interest not to exceed four percent; and to secure their payment by pledging rentals and physical education building and swimming pool fees to be levied by the college on students in attendance at that institution, together with those other monies not derived from the general appropriations by the State to the college.

The State Board of Education proposed to enter into a contract with the United States Government whereby it will grant to the State, for the construction of a physical education building and swimming pool at the State Teachers College at

Florence, as a relief project, $45,000 as a gift, and $55,000 on a thirty-year amortization loan; that the loan shall be repaid to the government from gross revenues accruing from the operation of the physical education building and swimming pool to be constructed on the campus of said institution by the use of such funds. Authority for this improvement is based on General Acts of 1935, p. 1064, under which all state educational institutions are granted the right to borrow money from Federal agencies for the erection of buildings, beautification of grounds, etc., and to comply with the requirements of the Federal agencies in reference to monies so loaned to issue bonds or warrants for the payment of same, and to pledge therefor fees from students to be levied by the institution and other monies not appropriated by the State. The bonds shall not be an obligation of the State, and shall not be payable out of any monies appropriated to the colleges or institutions by the State.

Due notice of a meeting of the State Board of Education was given and pursuant thereto a meeting was held at which there was a quorum of the governing body present. A resolution was duly adopted accepting the offer of the United States Government to the State Board of Education of Alabama to aid by way of loan and grant in financing the construction and equipping of a physical education building, etc., at said State Teachers College at Florence, Alabama, in the amounts we have indicated above.

To carry out the purpose of the resolution of its board and to provide for the payment of the costs of such proposed project (exceeding the amount of the grant made to the Board of Education by the United States Government), the Board of Education passed a resolution providing for the construction of a physical education building and swimming pool by the State Board of Education, declaring said construction to be a necessity, providing for the charging of rentals and fees for services rendered by the building and swimming pool, and providing for the issuance of bonds in accordance with the terms of said General Acts of 1935, p. 1064, to finance said construction. The resolution further contains an express contract on the part of the State Board of Education to faithfully and punctually perform all stipulated duties with reference to the project referred to, including the charging and collection of reasonable rentals and fees required in sufficient amounts for services rendered by the project, and to apply the parts of said respective funds created by the resolution to the amortization of said indebtedness.

The Board further duly resolved that there should be paid by the State Teachers College in Florence an annual rental in the sum of $1,200, payable at the rate of $100.00 a month for office facilities furnished the college by the physical education building, as such facilities accrue and are used, which sum should represent payment for services rendered by the accomplished and completed project to the State Teachers College. It was further resolved that there should be charged to the students attending the State Teachers College at Florence a quarterly fee of $2.50 as a physical education and swimming pool fee, which fee should be in addition to all other fees charged to the students and that all of the fees and the rentals above mentioned should be paid into a building revenue fund which should be disbursed as provided in the contract to discharge said obligation incurred.

The questions raised by the petition were as follows:

(1) Are special obligation bonds authorized by the governing board of the educational institutions of the State of Alabama payable solely from the revenue of the project constructed from the proceeds of such bonds, debts of the governing board, the college or the State of Alabama within the meaning of any constitutional or statutory limitations?

(2) If the project furnishes facilities to the college for which the project was constructed, may the college pay rentals monthly for the use of such facilities furnished by the project as such facilities accrue and are used by the college, such payments to be made from the general fund of the institution within its budget?

(3) May the governing board of the institution authorizing the issuance of the bonds provide remedies for bond holders by way of and as constituting the right of mandamus to enforce and compel the performance by its duly constituted official or officials of the duties and covenants contained in the bond-authorizing resolution?

In this connection, it may be stated that the decree of the circuit court is, among other things, as follows:

"That the governing body of the educational institution which authorizes the issuance of the bonds may provide remedies for the holders of the bonds so issued, such as the right of mandamus to enforce and compel the performance of all the duties and covenants contained in the bond-authorizing resolution, including the fixation and collection of rentals and fees sufficient to meet the requirements of the resolution; and also that a receiver may be appointed, as provided by the resolution, for the sole purpose of taking charge and control of the project for the purpose of operating the same for educational purposes for and 'on' behalf of the educational institution, and such receiver may have authority to charge and collect rentals and fees sufficient to provide for the payment of any bonds or other obligations outstanding against the Project and to charge and collect such rentals and fees as may be sufficient for the payment of the operating expenses of said Project, all such incomes and revenues, of the Project to be applied strictly in conformity with the resolution and the provisions of the Act approved September 13, 1935, General Acts of Alabama 1935, p. 1064."

■ It is established in this jurisdiction that the State Board of Education has general control and supervision over the public schools of the state, and in particular over the State Teachers College at Florence, Alabama. Article 4, Sections 35 and 58 of the School Code of 1927; Article 26, Sections 474–480 of the School Code of 1927.

■ The special obligation bonds authorized by the governing board of the educational institutions of the State of Alabama which are to be payable solely from revenue derived from the operation of the project constructed from the proceeds of such bonds, are not debts of the governing board, the college or the State of Alabama within the meaning of any constitutional or statutory limitations. Harman v. Alabama College, 235 Ala. 148, 177 So. 747; 10 A.L.R. 900; Miller v. City of Buhl, 48 Idaho 668, 284 P. 843, 72 A.L.R. 687; Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869, 96 A.L.R. 1385. Many authorities from other jurisdictions are to like effect, as will be considered later.

It is declared in another jurisdiction that where the project sought to be erected furnishes facilities to the college, such as office space and other educational facilities, the college may pay reasonable monthly rentals for the use of such facilities furnished by the project as such facilities accrue; that payments may be made from the general fund of the institution and out of reasonable fees for the use thereof, so long as the college avails itself of the facilities so furnished, and the payment is within its budget, or appropriation. State of Georgia v. Regents of University System of Georgia et al., 179 Ga. 210, 175 S.E. 567. Analogy is contained in State v. Clements, 220 Ala. 515, 126 So. 162.

■ A suit against a state official or agency to compel by mandamus or similar process the performance of official duties of a purely ministerial nature, involving the exercise of no discretion or political or governmental power, is not a suit against the state and may be maintained without the consent of the state. That is to say, the right of mandamus against an officer of the state or arm thereof in a proper case is a well established remedy and held to be a suit against the official to require the performance of a ministerial duty enjoined upon such official by law, in the due payment of funds appropriated for debts duly contracted under the law by such official or agency. State Board of Administration v. Roquemore, 218 Ala. 120, 117 So. 757; Finnell v. Pitts, 222 Ala. 290, 308, 132 So. 2; Pickett v. Richardson et als., 223 Ala. 683, 685, 138 So. 274; Oppenheim v. Florence, 229 Ala. 50, 54, 155 So. 859; First Nat. Bank v. Alston, 231 Ala. 348, 165 So. 241; Turnipseed v. Blan, 226 Ala. 549, 148 So. 116; Hall v. Blan, 227 Ala. 64, 148 So. 601; State Docks Comm. v. Barnes, 225 Ala. 403, 143 So. 581, and John E. Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377, 175 So. 387.

If it be necessary to advert to the authorities in other jurisdictions, it will be noted that in the case of State v. Regents of University of Georgia, 179 Ga. 210, 221, 225, 226, 175 S.E. 567, the Supreme Court of Georgia had a suit for injunction by the State of Georgia against the Regents of the University System of Georgia and another. That suit sought to enjoin the execution of a contract negotiated by the defendant and an agency or department of the Federal Government under which the defendant corporation proposed to ob-

tain a loan from the Federal Government to be used by the defendant in the construction of a new building at different branches of the university system, and in improvement of existing buildings. The contract provided that the university system should issue bonds to be secured by a closed first lien upon (a) the entire net income from the new buildings at such institutions, (b) the gross matriculation, hospital, laboratory, athletic and other student fees received by the borrower or by such institution from students, faculty members and others at such institutions, and (c) by gross annual rental payments from the athletic associations of certain institutions for the use of the gymnasium to be constructed thereat. The court concluded its opinion as follows (page 573):

"From what has been said it is our opinion that what is intended to be done by the Regents of the University System of Georgia, through its Board of Regents, will not in any manner infringe the Constitution as contended.

" * * * * . * *

"In view of the extensive powers granted to the corporation and to the Board of Regents, they have authority to buy land for college purposes, to construct dormitories, gymnasia, and other necessary buildings, and to charge reasonable fees for their use. They also have power to lease the gymnasia as contemplated by the contract. Nor could it be said to be an abuse of discretion for the regents to require students to occupy, 'to the maximum extent,' the new buildings in preference to existing buildings, for the purpose of creating net revenues from the new buildings to be pledged for the payment of the bonds, provided the loan agreement is not otherwise illegal."

The case of J. D. Van Hooser & Co. v. University of Kentucky, 262 Ky. 581, 90 S.W.2d 1029, involved an action under the declaratory judgment act by the University of Kentucky against J. D. Van Hooser Co. et al., to determine the validity of certain bonds issued for the purpose of procuring money for the erection of facilities for educational purposes at the University of Kentucky. The bonds were issued under an act by the Legislature of that state in compliance with the same request of the Federal Government as that made on the Legislature of Alabama in the instant case. The court concluded that the act was constitutional,

and that the resolutions adopted were substantially in conformity thereto, and were not violative of any provision of the Kentucky State Constitution.

The Supreme Court of Minnesota, in Fanning v. University of Minnesota, 183 Minn. 222, 236 N.W. 217, considered an enactment providing for the erection of a dormitory on the campus of the University of Minnesota, to be paid for out of the earnings of the dormitory, campus rentals, and certain outside and incidental earnings of the press belonging to the university. The act provided that the bonds were to be issued and should be the obligations of the regents of the university as a corporation secured by and payable only out of the earnings and rentals, and that no personal liability should attach to or be incurred by the State of Minnesota, the regents of the university, or any member or official of its board of regents. The court held in this case that:

"The Constitution vests the government of the University of Minnesota in the board of regents, following State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 220 N.W. 951; and in the exercise of its granted power of government, so long as it keeps within the limits of its grant, it is not subject to legislative or executive interference or judicial control at the suit of a taxpayer.

"In the exercise of its power of government the board may construct a dormitory upon the university campus without legislative authority.

"The proceeds of rentals from buildings on the campus, not used for university purposes, assigned in a proviso of an appropriation bill to the maintenance and improvement of the campus, may be used in the construction of a dormitory. * * *

"In the construction of a dormitory, the board may use earnings fom its university press for work done outside of that done for the university, the earnings being incidental to its use for university purposes.

"The board may appropriate the net earnings of the dormitory and pledge rentals and earnings of the character noted to the payment of money advanced for dormitory construction and undertake that they shall be so applied. It may evidence its pledge and undertaking by writings called bonds, which exempt the state and the university and the regents and officers

from personal liability, as well as all the property of the state, the university, and the board, including the dormitory itself, from any charge."

The Supreme Court of North Dakota considered the case of State v. Davis et al., 59 N.D. 191, 210, 211, 229 N.W. 105. This suit involved the establishment of a dormitory for the Agricultural College at Fargo, N. D. The action was for injunction against the members of the board of administration of the state from granting a permit to enter into any arrangements with the Agricultural Dormitory Association of Fargo, for the erection of a dormitory on the campus of the Agricultural College. It was contended that the legislative enactment was unconstitutional in that the act authorized the board of administration to create an obligation of the state in excess of the debt limit of the state as prescribed in section 182 of the Constitution of said state. The court in the body of the opinion said (page 112):

"It is true the statute permits a portion of the campus to be occupied by a dormitory erected by the institutional holding association; but the dormitory may be operated only for the benefit and use of the educational institution. In short, it may be used only to facilitate the work of that institution. The Legislature has determined that there is such an existent need for a dormitory as to justify the construction thereof upon the terms and conditions prescribed in the act. The Legislature must also have determined that it would be for the benefit of the Agricultural College (and the other educational institutions specified in the act) to have dormitories constructed upon the terms and conditions prescribed, and that consequently it is to the advantage of the state and the various educational institutions named in the act that this be done. If there is a necessity for the construction of such buildings to facilitate the work of the particular educational institutions at which they are authorized to be constructed, then there is obviously ample consideration for the use of the sites on which dormitories may be constructed. This being so, there is, of course, no donation.

"* * * * * * *

"It is next contended that the act authorizes the board of administration to create an obligation on the part of the state in excess of the debt limit prescribed by section 182 of the Constitution. This con-tention cannot be sustained. Under the terms of the act there is no possible way in which any obligation can be incurred on the part of the state."

The Supreme Court of Oregon considered a similar question in McClain v. Regents of University of Oregon, 124 Or. 629, 265 P. 412, a suit to enjoin the issuance and sale of bonds in the amount of $400,-000.00, the proceeds of which were to be used in the construction of a dormitory on the campus of the University of Oregon. The court held:

"University of Oregon is not an independent legal entity, but is an administrative agency vested by Legislature with certain corporate powers, and any indebtedness authorized by statute is an 'indebtedness of the state,' within the meaning of Const. art. 11, § 7.

"Action of board of regents of State University pursuant to Laws 1927, p. 364, §§ 1, 2, authorizing sale of bonds for construction of dormitory with the only liability against a special fund to be made up exclusively of net rentals received therefrom, held not in violation of Const. art. 11, § 7, limiting state indebtedness."

In the body of the opinion, the court said:

"Having held that the 'Regents of the University,' although a public corporation, is nevertheless an agency of the state and not an independent legal entity, we next inquire, Does the legislative act authorizing the construction of a dormitory from net rentals contravene the constitutional provision relative to limitation of indebtedness? We think the act is reasonably susceptible of the construction which the regents have given it as disclosed by their resolution.

"* * * * * * *

"The only liability is against a special fund which is to be made up exclusively of net rentals. No violation of the constitutional provision against indebtedness is involved."

To like effect is Brockway v. Roseburg, 46 Or. 77, 79 P. 335.

The Supreme Court of Oklahoma in Baker v. Carter, 25 P.2d 747, 753, citing a decision of the Supreme Court of New Mexico in the case of State v. Regents of the University of New Mexico, 32 N.M. 428, 258 P. 571, 572, in which that court considered a suit for an injunction on behalf of the State by the Attorney General

seeking to enjoin the Regents of the University of New Mexico from putting out an issue of $90,000 of building and improvement bonds, denied the injunction, and the holding was to the effect we have indicated from many jurisdictions.

■ It would appear from the foregoing decisions that no new or untried method has been introduced in our state educational system by the General Acts of 1935, p. 1064. If the project furnishes necessary facilities to the college for which the project was constructed, such as office space for instructors of such college, may the college pay rentals monthly for the use of the same as such facilities accrue; and may such payments be made from the general fund of the institution?

This question is answered in the affirmative as long as so used and within the budget. That is to say, the college or institution may pay monthly rentals for the use of necessary facilities or buildings constructed from the proceeds of the bonds which they are seeking to issue, and said rentals may be payable from the general fund of the institution, so long as that institution continues to avail itself of the use of said facility and operates within· its budget as to such payment. Such is the result, for the general fund of the institution contains the money appropriated to it by the legislature for maintenance and support and such rentals would be a part of operating expenses.

The appropriation to this college or institution is found in General Acts of 1935, p. 742. Section 5 of said act, dealing with the source from which the appropriation should be made, was amended by the General Acts of 1936–37, Ex.Sess:, p. 16, and was approved January 26, 1937.

Section 474 of Article 26, of the Alabama School Code of 1927, vests the control and management of the State Teachers College at Florence (as well as all other state teachers colleges) in the State Board of Education.

Section 477 of said article of said code charges the State Board of Education with the responsibility of directing the expenditure of the annual legislative appropriation for the support and maintenance of the college or institution. Rentals for the use of buildings, are part of the necessary expenses of maintenance and support of such institutions. Allen v. Intendent, etc., 89 Ala. 641, 8 So. 30, 9 L.R.A. 497. The facilities involved which the institution desires to use and pay a reasonable monthly rental for said use from the general fund of the institution within its budget may be provided and paid for so long as it continues to use that institutional facility. These facilities are to be built from the proceeds of a forty-five per cent grant from the Federal Government, and a loan from the Federal Government to the college of the remaining fifty-five per cent, in the instant case.

For the remedy of a receivership reliance is had upon Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869, 96 A.L.R. 1381, but that case dealt with the construction of a waterworks system by the municipality, a corporation, as distinguished from a governmental function (Town of Athens v. Miller, 190 Ala. 82, 66 So. 702), and the act under which the bonds were issued [General Acts 1933, Extra Session, p. 88] expressly provided for a statutory mortgage lien, and the appointment of a receiver in event of default.

■ We are here dealing with an act which contains no such provision. And in view of the fact that the property involved is state-owned, the use of which is in the exercise of a governmental function, we are not at liberty to assume the legislature intended to extend such power . by the single act here before us, which wholly fails to indicate any such legislative intent.

There is nothing, therefore, in the act which indicates the law making body intended any mortgage lien on the property there to be acquired and the appointment of a receiver therefor in event of default. The case of Bankhead v. Town of Sulligent, supra, is therefore readily distinguishable and in no manner in conflict ,with the conclusion here reached.

■ We have indicated that the remedy by mandamus on default or failure of payment is full, complete and ample to compel the levy and payments by the duly constituted state officials, clothed with administrative authority in the premises. It results that in this respect the decree of the circuit court is to be here corrected by the elimination of such remedy of receivership. Alabama College v. Harman, 234 Ala. 446, 175 So. 394.

Is there then a conflict in the decisions in Alabama College v. Harman, 234 Ala. 446, 175 So. 394, and Harman v. Alabama College, 235 Ala. 148, 177 So. 747? The original records have been examined and

found to be materially different. The salient features in the first case are that the state institution was created by statute and had the right to contract debts and borrow money under the act of its creation and general authority, as an obligation of the state, and as security therefor to issue bonds and mortgage its real estate for the purpose of erecting a students' dormitory. It was held that the institution had no such authority of law. In that suit the provisions of the General Acts set out in response to rehearing in Alabama College v. Harman, 234 Ala. 446, 175 So. 394, were not presented or taken into consideration on rendition of the original opinion. It was there stated by Mr. Justice Knight for the court (page 398):

"On application for rehearing our attention has been called for the first time to an act of the Legislature of Alabama, approved September 13, 1935, Gen.Acts 1935, p. 1064 * * *."

"All that need be said is that the bill, as filed in this case, clearly does not seek a declaratory judgment or decree as to the right of the complainant to borrow money from the federal government, or from any federal agency, as provided in said act. On the contrary, it seeks a declaratory judgment as to whether it had power generally to borrow the money and pledge the properties of said institution for its payment."

In response to this observation the pleadings were recast, in the second suit, the feature of the issue of bonds on the general authority of the law or the statutes of the creation of the college as a general obligation of the state was eliminated; and the resolution of its corporate board, under the provisions of the General Acts of 1935, p. 1064, giving such corporation the special authority to borrow money from federal agencies for the erection of a dormitory was made the dominant feature of this last pleading. The decision was that the debt created by such a loan for that stated purpose was not a debt incurred by the state or its authority, and was not within the inhibitions of the constitution against the creation of a new debt by the state or its authority. School Code 1927, § 500; General Acts 1923, p. 255; General Acts 1935, p. 1064; Const.1901, §§ 14, 213. It was there stated:

"The debts so contracted are not state debts. The right to sue them may be differentiated from the right to sue such institutions as state colleges and hospitals, purely educational or welfare organizations not of a business nature. But we see no reason why such colleges and hospitals, when incorporated, may not be given express legislative power to contract debts without thereby setting up a state debt. There is no prohibition in the Constitution. * * * But in doing so, it must be understood that the college cannot be sued to enforce the debt nor any collateral obligation thereby arising.

"In the former case, we held that the Legislature had not attempted to confer on Alabama College (not considering the act of 1935, supra) the power to contract a debt such as here contemplated. But clearly the act of 1935 does undertake to do so, and we see no reason why it cannot as now proposed." Harman v. Ala. College, 235 Ala. 148, 177 So. 747, 751.

That is to say, that the first decision was not based on the authority conferred by the Act of September 13, 1935 (Gen. Acts 1935, p. 1064) and the last decision was so rested. Hence there is no conflict in the two decisions.

■ Is the proposed bond issue and resolution providing for its amortization within the inhibition of any statutory or constitutional provision? We have indicated that the same is not within the prohibition of the constitution. Alabama College v. Harman, 234 Ala. 446, 175 So. 394. This holding is supported by the following authorities: In re Opinions of the Justices, 226 Ala. 570, 148 So. 111; Oppenheim v. Florence, 229 Ala. 50, 155 So. 859; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774; Harman v. Alabama College, 235 Ala. 148, 177 So. 747.

It should be stated at the present time that the resolution of the board, or governing body, of the institution embodied the offer of the Federal Emergency Administration of date of July, 1938, containing among other things the following:

"Payable as to both principal and interest solely from and secured by an exclusive first pledge of and lien upon an amount of the gross fees charged each and every student for the right to use the Project (after deduction only of the reasonable expenses of operation and maintenance thereof) sufficient to pay the interest on and principal of the Bonds, as the same be-

come due, and to maintain an adequate reserve therefor.

"2. Notwithstanding anything in this Offer or in the said Terms and Conditions, the Government shall be under no obligation to advance or furnish any funds hereunder until the Applicant shall have established to the satisfaction of the Federal Emergency Administrator of Public Works, by test suit or otherwise as he may require, that the Bonds will be valid, legal and binding obligations of the Applicant, payable and secured as specified herein, and that, in the event of default, whether in the payment of interest on or principal of any Bond or in the performance of any other covenant thereof, the holder thereof will be entitled, as a matter of right, to judicial process to compel the Applicant or the officers thereof (or both the Applicant and its officers) to cure such default or perform such covenant (or both) in accordance with the tenor and effect of such Bond and the commitments and undertakings therein expressed; and the Government shall be under no obligation to purchase any of the Bonds until the Applicant shall have established (a) that it has covenanted, in the Resolution authorizing the Bonds, to establish and enforce, so long as any of the Bonds remain outstanding and unpaid, a fee for the right to use the Project, to be collected from each and every student in the State Teachers' College at Florence, in advance at the time of registration for each regular or summer term, in an amount such that the annual total of such fees shall be sufficient to provide for the operation and maintenance expenses of the Project and to pay the interest on and principal of the Bonds, as the same become due, and to maintain an adequate reserve therefor, and to notify the students of said College of such fee by suitable posting and by publication in each annual catalog; and (b) that it has set said fee initially at not less than $2.50 per quarterly term for each of not less than 3 regular terms and 1 summer term in the school year."

The resolution recited that "the same is hereby in all respects accepted; that said State Board of Education of the State of Alabama agrees to abide by all the Terms and Conditions of said offer, including the Terms and Conditions annexed thereto and made a part thereof; that the Chairman be and he is hereby authorized and directed forthwith to send to the Federal Emergency Administration of Public Works three certified copies of the proceedings of the State Board of Education of the State of Alabama in connection with the adoption of this Resolution, setting forth this Resolution in full, and such further documents or proofs in connection with the acceptance of said offer as may be requested by the Federal Emergency Administration of Public Works."

It is averred that there was full compliance in this and other required respects.

In compliance with the provisions of this offer, embodying the resolution and the second provision of the offer, reciting that the holder of the obligation, or the Federal Emergency Administration of Public Works, will be entitled, as a matter of right, to judicial process to compel the applicant, or the officers thereof, or both the applicant and its officers, to cure such default or perform such covenant, or both, in accordance with the tenor and effect of such bond and the commitments and undertakings therein expressed, the present bill was filed on the agreed statement of facts, the pleadings being indicated in the respective petitions, a decision of the circuit court was had, and an appeal to this court is now for decision. We have indicated that where there is not the right of the seizure of the property by way of appointment of a receiver and its operation through such officer, that the right to compel the respective officers of the institution by way of mandamus, to make the levy and fix the fees, to collect and keep the same separate for and to discharge the respective payments, interest and principal on such bond and undertaking, is ample, full and complete. Under the adjudicated cases from this and other jurisdictions, it appears, and we now declare, that the right of mandamus is sufficient protection to purchasers, whether such obligations are sold direct to the Federal agencies or to private purchasers.

It follows that the decree of the circuit court as corrected, by the elimination of the remedy for collection upon default on the debt through a receivership, is affirmed.

Corrected and affirmed.

ANDERSON, C. J., and GARDNER and KNIGHT, JJ., concur.

BOULDIN, J., dissents as per opinion.

BROWN and FOSTER, JJ., did not sit.

BOULDIN, Justice (dissenting).

In view of the clear remedy by mandamus to require the officers and agents in charge to perform the obligation stipulated in the matter of charging, collecting, setting apart, and applying fees to the payment of the bonded debt, and the payment of stipulated rentals from other funds of the institution available for the purpose, I do not see how an occasion could arise for a receivership.

But upon full consideration of the nature of the receivership proposed, if occasion should arise, I am of opinion that with or without such stipulation, the bond-holders would be entitled to appropriate equitable remedies, including a receivership of the character contemplated. A receivership to operate these facilities for the benefit of the Institution, not an entering upon and taking possession of state properties for the exclusive benefit of bond-holders, but solely to make effective the obligation which the State Agency undertook to perform, but failed so to do, does not appear to be unwarranted. The authorities cited in the main opinion sustain this view.

The second question upon which an adjudication is sought, is thus stated in brief: "If the State Teachers College at Florence, Alabama, uses office space or other educational facilities furnished it by the project, may the College pay rentals monthly for the use of such facilities so furnished as the service accrues? Such payment to be made from the general fund of the Institution and the Institution to be bound only to pay for such services as it continues to avail itself of the facilities furnished by the project."

In my opinion this inquiry should be answered in the affirmative, but with the added provision: "But no part of such rentals shall be paid out of any moneys appropriated by the State to said Institution."

By the terms of the proposed contract, the bonds are payable from the "rentals" and the fees to be levied as per contract. The property rented is deeded to the State Board of Education. The project is for a school building for special purposes. The rental provision is that if the Institution use this property, for other needed school purposes, a rental shall be paid to the bond-holders. The stipulation is solely to provide security for the bonds in the sum of $100 per month. Otherwise, it is meaningless.

In the absence of the plain limitation in our Enabling Act, such stipulation could be made as in the Kentucky case.

The Legislation Act (Gen.Acts 1935, p. 1064) is the Enabling Act authorizing the issuance of the bonds here contemplated.

This Act authorizes the State Agency "to pledge therefor the *fees from students* to be levied by the Institution *and other moneys* not appropriated by the State to the Institution." Section 2.

"The bonds * * * shall not be an obligation of any nature whatsoever of the State, and shall not be payable out of any moneys provided for or appropriated by the State to the Institution." Section 3.

This is part of the Enabling Act which cannot be stricken by construction.

The Legislature probably considered any contract stipulation calling for the payment of long term bonds out of moneys appropriated by the State from its general funds would be tantamount to the creation of a debt on the part of the State in violation of the Constitution. The Bridge bonds referred to in brief, are payable from rentals expressly authorized by statute from special funds devoted from the beginning to road and bridge construction.

In view of the well known fact that the Institution has other moneys which may be pledged along with student fees, and which will many times exceed the rentals of $100 per month, I cannot see how following and giving effect to the statute with reference to State Appropriations could reasonably stand in the way of this needed improvement.

In any event, this court is concerned with the law of the case, to write it truly.