191 So. 82

### In re OPINIONS OF THE JUSTICES.

### No. 58.

Supreme Court of Alabama.

Oct. 3, 1939.

To the Justices of the Supreme Court of Alabama.

Gentlemen:

Under section 10290 of the Code of Alabama of 1923, I hereby request an opinion of the Justices of the Supreme Court on the following important constitutional questions:

I attach hereto and make a part hereof Act No. 522 of the Legislature of Alabama, approved on September 21, 1939.

1. Does said Act violate any of the provisions of Section No. 213 of the Constitution of Alabama?

2. Will loans made under and by virtue of the provisions of said attached Act constitute such a debt against the State of Alabama as is prohibited by Section No. 213 of the Constitution?

Respectfully submitted,

Frank M. Dixon,
Governor.

The following is the Act referred to in the foregoing inquiry:

No. 522      H.640—Brown of Covington

An Act to provide for a public corporation for the purpose of assisting county and city boards of education to pay teachers' salaries and other current expenses when the same are due; to prescribe its powers and duties; and to authorize said corporation to borrow money in anticipation of the proceeds of the Minimum Program Fund appropriation and to issue warrants or notes as evidence of the same and to provide for the payment of the principal and interest of said warrants from the Minimum Program Fund and to give the State Board of Education power to authorize the corporation to pledge the proceeds of the Minimum Program Fund appropriation for payment of principal of and interest on warrants and notes issued under the provisions of this Act.

Be it enacted by the Legislature of Alabama:

Section 1. That the Director of the State Department of Finance, the Commissioner of the State Department of Revenue, and the State Superintendent of Education may become a corporation with the power and authority herein defined by proceeding according to the provisions of this Act.

Section 2. To become a corporation the said three persons or the successor or successors to their functions and duties and the Governor shall present to the Secretary of State of Alabama an application signed by them which shall set forth: (a) The name, official designation and official residence of the applicants, together with a certified copy of the commission evidencing their right to office, the date and place of induction into and taking oath of office, and that they desire to become a Corporation under this Act; (b) The term of office of the applicants, and the place where, if any, the official commission of applicants is kept of record; (c) The name which is proposed for the corporation. The location of the principal office of the proposed corporation shall be Montgomery, Alabama. The declaration shall be subscribed and sworn to by each of the applicants before an officer authorized by the laws of the State of Alabama to take and certify oaths, who shall certify upon the declaration that he personally knows the applicants and believes them to be the officers as asserted in the declaration, and that they each subscribed and swore thereto in the officer's presence. The Secretary of State shall examine the declaration and if he finds that the name proposed for the Corporation is not identical with that of a person or of any other corporation in this State, or so nearly similar thereto as to lead to confusion and uncertainty, he shall receive and file the declaration, and shall record it

in an appropriate book of record in his office.

Section 3. When the declaration has been made, filed and recorded, as herein provided, the applicants shall constitute a corporation under the name proposed in the declaration; the Secretary of State shall make and issue to the applicants a certificate of incorporation, pursuant to this Act, under the seal of the State and shall record the same with the declaration.

Section 4. The Corporation under this Act shall have the following powers and such as shall be incidental or necessary to the discharge thereof in corporate form: (a) To have succession by its corporate name for twenty years; (b) To sue and be sued and defend, and to make and use a corporate seal and to alter the same at pleasure; (c) To borrow money and to issue notes or warrants and to pay interest on the same and to pledge the proceeds of appropriations to secure the payment of money received by such corporation in accordance with the provision of this Act; (d) To wind up and dissolve itself, or be wound up and dissolved in the manner in this Act provided.

Section 5. The purpose of the corporation shall be to assist local boards of education to pay teachers' salaries and other current expenses as the same shall fall due by borrowing money in anticipation of the proceeds of the Minimum Program Fund appropriation, and by depositing said funds borrowed to the credit of the Minimum Program Fund in order that the Minimum Program Fund may be disbursed at the time or times during the fiscal year when it is most needed.

Section 6. Beginning October 1, 1939, and in each fiscal year thereafter, the corporation shall have the power to borrow money and issue interest bearing notes or warrants as evidence of the same, and to pledge the proceeds of the Minimum Program Fund appropriation for that fiscal year during which warrants or notes are issued to secure the payment of money received by said corporation provided that all such notes and warrants issued in any fiscal year shall be payable from the proceeds of the Minimum Program Fund appropriation for that fiscal year. The State Board of Education shall have the power to authorize the corporation to pledge the proceeds of the Minimum Program Fund appropriation for payment of the principal of and interest on warrants and notes issued under the provisions of this Act. It shall not be necessary for the State Board of Education to give a separate authorization for each individual issue of notes or warrants, but one authorization during each fiscal year shall be sufficient to enable the corporation to pledge the proceeds of the Minimum Program Fund for all notes and warrants issued during that fiscal year according to the provisions of this Act. The principal and interest of all such warrants or notes issued in any fiscal year shall constitute a prior lien on the Minimum Program Fund appropriation for that fiscal year. The total amount of the outstanding principal of said notes and warrants at any time during any fiscal year shall not exceed forty per cent of the total Minimum Program Fund appropriation for that fiscal year, nor shall the total outstanding principal of and interest on warrants and notes issued by the corporation at any time exceed ninety per cent of the remaining unpaid Minimum Program Fund appropriation for that fiscal year.

Section 7. The principal of and interest on all warrants or notes issued under the provisions of this Act shall be payable solely from the proceeds of the Minimum Program Fund appropriation and in order to secure the payment of said warrants or notes, the State Superintendent of Education shall not make requisition on the State Comptroller and the State Comptroller shall not issue warrants disbursing any funds available in the Minimum Program Fund to local boards of education at any time during any fiscal year if the principal of and interest on said outstanding warrants and notes exceeds ninety per cent of the balance of the unpaid Minimum Program Fund appropriation for that fiscal year.

Section 8. On or before the twentieth of each month the State Superintendent of Education shall submit to the corporation in writing an estimate of the amount of money needed to be borrowed by the corporation for the purpose of assisting county and city boards of education to pay teachers' salaries and other current expenses as the same shall fall due and the corporation shall have the authority to borrow money not in excess of the amount so estimated by the State Superintendent

of Education subject to the provisions of this Act. All money borrowed by said corporation shall be deposited in the State Treasury to the credit of the Minimum Program Fund and apportioned to local boards of education in accordance with the laws of this State.

Section 9. During the time the principal of or interest on warrants or notes issued under the provisions of this Act remain outstanding the procedure to be followed in disbursing the Minimum Program Fund shall be as follows: (a) On or before the twentieth of each month, the corporation shall file statements with the State Comptroller and the State Treasurer setting forth the principal of and interest on all outstanding notes and warrants issued by the corporation; (b) On or before the twentieth of each month the corporation shall instruct the State Superintendent of Education as to the disposition of funds available in the Minimum Program Fund appropriation setting forth the amount of said available funds to apportion to local boards of education and the amount to apply to the payment of principal and interest upon outstanding notes and warrants issued by the corporation and thereupon the State Superintendent shall make requisition on the State Comptroller in accordance with the instructions of the corporation provided, however, that the State Superintendent of Education shall not make requisition on the State Comptroller in favor of local boards of education and the State Comptroller shall not issue warrants disbursing any of the Minimum Program Fund to local boards of education nor shall the State Treasurer cash any warrants drawn in favor of local boards of education on the Minimum Program Fund at any time if the outstanding principal of and interest on warrants and notes issued by the corporation exceeds ninety per cent of the unpaid balance of the Minimum Program Fund appropriation for that fiscal year.

Section 10. The President of said corporation shall be the Director of the State Department of Finance and the Vice-President and Secretary shall be selected and designated by the members of the corporation.

Section 11. No officer of the corporation shall draw any additional salary on account of services rendered in connection with said corporation.

Section 12. Should any applicant or incorporator die, or his term of office expire or his office become vacant for any reason before the dissolution of the corporation, his successor or successors in office shall take his place and official position as a member of said corporation.

Section 13. There shall be no fees paid to the Secretary of State for any work in connection with the incorporation or dissolution of the corporation.

Section 14. Any corporation under this Act may be dissolved by the applicants or their successors filing with the Secretary of State their application therefor, which shall be subscribed, sworn to and certified as in the case of a declaration for incorporation. Upon the filing of said certificate, the corporation shall cease. The Secretary of State shall record the application for dissolution and shall make and issue under the seal of the State his certificate that the corporation is dissolved, and shall record the certificate with the application for dissolution, but such dissolution shall not affect adversely rights attaching under existing contracts; and the corporation shall be deemed to continue for suit or defense.

Section 15. Any record kept or certificate issued in pursuance of this Act, or a copy of any such record certified to be true by the legal custodian thereof, shall be received in evidence in all courts and shall be prima facie evidence of the facts therein received, or thereby shown.

Section 16. The corporation may sell its securities at public or private sale. The State Treasurer shall record all warrants or notes issued by the corporation. Warrants or notes issued by the corporation and the interest thereon shall be free from taxation in the State of Alabama. Warrants or notes issued by the corporation shall be eligible as security for deposits of State funds. Purchaser of warrants or notes issued by the corporation must pay for securing any legal opinion desired by the purchaser.

Section 17. No warrant or note issued by the corporation shall be the debt of the State of Alabama, nor shall the State of Alabama or its general faith and credit, be pledged to the payment of said obligations and said obligations shall not in any event be deemed or considered a debt or an obligation of the State of Alabama, but the purchaser or assignee or holder of any such

warrants or notes issued by said corporation shall look solely to funds actually appropriated to the Minimum Program Fund for the payment of the principal of and interest on said warrants or notes.

Section 18. The securities issued by said corporation shall be signed by its President and attested by the Secretary selected by said corporation who shall affix to such instruments the official seal of the corporation.

Section 19. This Act shall take effect immediately upon its passage and approval.

Section 20. Should any provision of this Act be declared unconstitutional, it shall not affect the remaining part of the Act.

Approved September 21, 1939.

Hon. Frank M. Dixon
  Governor of Alabama
  Montgomery, Alabama
Dear Sir:

Your communication containing several inquiries on constitutional matters has been received.

The interrogatory propounds the question as to whether the Act approved September 21, 1939, is offensive to any provision of Section 213 of the Constitution of Alabama, as amended, Amend. No. 26. In re Opinions of Justices, 227 Ala. 296, 149 So. 781.

The several recent decisions of this court are collected in Skinner's Alabama Constitution Annotated, p. 742 et seq.

The Act creating the Alabama Highway Corporation, authorizing it to issue bonds for purpose of obtaining funds for public roads to match federal funds for like purposes (Acts 1935, p. 1006), Section 14 of which expressly provides that such evidence of indebtedness shall not be a debt of the State and the faith and credit of the State is not pledged, has been held not to infringe upon the provisions of the Constitution under the authority of Scott v. Ala. Bridge Corp., 233 Ala. 12, 169 So. 273; Rogers, President, Alabama Bridge Corporation v. Garlington, 234 Ala. 13, 173 So. 372; In re Opinions of Justices, 223 Ala. 130, 136 So. 489; In re Opinions of Justices, 225 Ala. 361, 143 So. 808.

The provisions of the Constitution touching the questions here presented were considered in Alabama State Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695; Keller v. State Board of Education etc., 236 Ala. 400, 407, 408, 183 So. 268.

■ The effect of the Act in question and of its due administration is not offensive to Section 213 of the Constitution. The constituted agencies or the corporation provided for in the Act have the authority to make the loans in question for the limited period indicated, and for the purpose of a systematic maintenance of the public schools of the state as conducted in the several counties and cities thereof for the period of such "fiscal years."

The decisions in Harman v. Alabama College, 235 Ala. 148, 177 So. 747; Alabama College v. Harman, 234 Ala. 446, 175 So. 394; Harris v. Cope et al., 236 Ala. 415, 419, 183 So. 407, are to be distinguished and are not in conflict with the decision in the Scott and Keller cases, supra.

In the last cited cases the administration attempted was to create a debt of the state, or to mortgage state properties, or lands of the college, or to pledge revenue appropriated by the state for school purposes in such wise as to illegally affect or materially embarrass in the operation the schools and appropriations and revenues provided by law, or to surrender the ability of that state institution, agency or school board to discharge its proper function in a due appropriation of the revenues in future years. The last cited cases declared that this may not be done under the Constitution.

Such illegal effect is not authorized in a due administration of the agency or corporation created by the Act approved September 21, 1939, and hence that Act is not unconstitutional when tested by the decisions of this Court as heretofore considered and now indicated, in the due anticipation of the revenues for a fiscal year.

We look to the case of Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161, where a county was indebted to its constitutional debt limit. It could therefore make no debt. However it was held that by authority of law a county could anticipate its revenue for the current year to pay its necessary current operations payable only out of that year's revenue.

■ It is well known that a state may create a public corporation to operate its governmental and other functions, and make an annual appropriation to it for its necessary current operations, provided that such appropriation is not available after the state's current fiscal year has ended. Section 213, as amended, Constitution.

■ In line with the principle declared in the Gay-Padgett case, supra, which is approved in our cases herein cited, we see no reason why a public corporation, such as is created by the Act involved in your inquiry, to which an annual appropriation has been made for current operations, may not during the current fiscal year in which an appropriation is payable, anticipate its payment by making a temporary loan payable only out of that year's appropriation when and if it is paid by the State, to pay expenses intended to be paid out of such appropriation.

We have used the expression "when and if" in the foregoing sentence, having in mind the budget provision of our Constitution, which must of course be observed.

In a true sense it is not a "debt" of the State or public corporation, and has no force after the current fiscal year. Hall v. Blan, 227 Ala. 64, 148 So. 601. The power conferred by the Act on the corporation to borrow money is approved by us in view of the fact that it authorizes such loans to be payable only out of appropriations due the current year, and that appropriations made payable in subsequent years cannot be used to pay loans made in previous years.

■ The only recourse which the holder of such a claim has against the corporation is by mandamus directed to its officers to compel them to discharge such duty as has been imposed on them by law in that connection. Keller v. State Board of Education, supra.

Respectfully submitted,

JOHN C. ANDERSON,
Chief Justice.
LUCIEN D. GARDNER,
WILLIAM H. THOMAS,
VIRGIL BOULDIN,
ARTHUR B. FOSTER,
Associate Justices.

Response of Mr. Justice BROWN

Honorable Frank M. Dixon
Governor of Alabama
Montgomery, Alabama
Dear Sir:

I regret that I am compelled to dissent from the opinion of the majority of the Justices. I can not approve the proposition that the borrowing of money, the agreement to pay interest for its use and the issuance of notes, warrants or bonds securing its repayment as contemplated by said Act No. 522 does not create a debt; nor can I agree that the Legislature or the courts by a mere ipse dixit that such obligation is not a debt change the fact that it is a debt.

The sanction and approval of such a proposition by the Legislature and the courts will result in breaking down the debt limitation in the Constitution, lead to profligacy and extravagance and invite greater burdens in taxation to meet public obligations.

Section 213 of the Constitution, as last amended (Amend. No. 26), provides: "After the ratification of this constitution, no new debt shall be created against, or incurred by the state, *or its authority* except to repel invasion or suppress insurrection, and then only by a concurrence of two-thirds of the members of each house of the legislature, and the vote shall be taken by yeas and nays and entered on the journals; provided, the governor *may be authorized to negotiate temporary loans,* never to exceed three hundred thousand dollars, to meet the deficiencies in the treasury, and until the same is paid no new loan shall be negotiated; (provided, further, that this section shall not be so construed as to prevent the issuance of bonds for the purpose of refunding the existing bonded indebtedness of the state. Provided, further, that this section shall not be construed as to' prevent the governor from paying interest. at the rate of not exceeding 5% per annum, payable semi-annually from July 1, 1933, on the floating indebtedness of the state at the close of business on September 30, 1932, as shown by outstanding and unpaid warrants drawn on the treasury, as provided by law, amounting in the aggregate to $16,-943,357.12 and items enumerated in an act of the legislature number 294, being senate bill 272, approved November 9, 1932, all of which are hereby ratified and confirmed.) All warrants and/or instruments issued or to be issued representing such indebtedness shall be a direct obligation of the state, and for the prompt and faithful payment of the principal and interest thereon, the full faith and credit of the state is hereby irrevocably pledged, and such warrants and/or instruments shall be exempt forever from all taxes of every kind. *Any act creating or incurring any new debt against the state, except as herein provided for, shall be absolutely void."* (Italics supplied.)

This Section of the Constitution is not only a limitation on the power of the Legislature, to create any debt against the State, it is a limitation on its power to *grant authority to any other person or agency to create debts* to be paid out of the revenues of the State gathered under the taxing powers thereof. The provisions are that *"no new debt shall be created* against, or incurred by the state *or its authority,"* except as therein provided for, and that "Any act [of the Legislature] creating or incurring any new debt against the state, except as herein provided for, shall be absolutely void." To give emphasis to this mandatory Section of the Constitution it further provides: "Any person violating any of the provisions of this amendment shall, on conviction, be punished by a fine of not exceeding five thousand dollars, or by imprisonment in the penitentiary for not more than two years, one or both, at the discretion of the jury trying the same, and the violation of any provisions of this amendment shall also be ground for impeachment." Alabama Constitution Annotated, Skinner, pp. 987, 988, 989. (Italics supplied.)

The purpose and effect of the Act is to authorize the *pseudo-public* corporation to borrow money to pay obligations which the State has become obligated to pay, or has assumed to pay through appropriation, and for which the State has made appropriations, and to *authorize* said corporation to pledge this appropriation to the re-payment of such loan.

It is well settled that when the Legislature enacts a statute, it is the act of the State.

"Thus a state may contract with an individual or with another state *by an act of the legislature."* 59 C.J. 170, § 284; Nixon v. Herndon et al., 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759. (Italics supplied.)

All power to incur any indebtedness for public purposes, unless given by the Constitution to some other body politic, or individual rests in the Legislature. 59 C.J. 213, § 350.

"An express constitutional inhibition against the legislature and all officers, acting for or on behalf of the state, from creating a debt must necessarily operate upon a state board." 59 C.J. 215, 351.

The sole purpose of the act and its legal effects, if valid, is to create a pseudo-public corporation to act for the State, and authorize it to borrow money to pay teachers' salaries, obligations which the State has assumed, and for the payment of which it—through and by the act of the Legislature—has appropriated money from the treasury, and to pledge this appropriation for the repayment of said loan. To avoid the effect of the Constitution, by mere legislative ipse dixit, the act declares that the debt so created is not a debt of the State.

To quote the provisions of the Act: "Section 17. No warrant or note issued by the corporation shall be the debt of the State of Alabama, nor shall the State of Alabama or its general faith and credit, be pledged to the payment of said obligations and said obligations shall not in any event be deemed or considered a debt or an obligation of the State of Alabama, but the purchaser or assignee or holder of any such warrants or notes issued by said corporation shall look solely to funds actually appropriated to the Minimum program Fund for the payment of the principal of and interest on said warrants or notes."

This does not meet the limitation on legislative power embodied in § 213 of the Constitution as amended that "No new debt shall be created against, or incurred by the state, or its authority" (with exceptions not here material). The Act of the Legislature which is the Act of the State, authorized the borrowing of money, which as a matter of law is the *creation of a debt,* which is to be repaid out of state funds.

A proposed act, of similar import, was held to be a violation of § 213 of the Constitution in Opinion of Justices (In re Alabama Educational Finance Corporation Act), 225 Ala. 356, 143 So. 289.

Since this decision the Constitution has been amended, with emphasis. Said amendment was brought about in part by temporary loans to meet educational obligations.

When will we again hear the cry from every stump in Alabama that "Alabama's debts must be paid," in support of constitutional amendment providing for the issuance of bonds to pay debts contracted beyond constitutional limitations?

Respectfully submitted,

JOEL B. BROWN,
Associate Justice.