[Hughes v. City of Tuscaloosa.]

# Hughes *v.* City of Tuscaloosa.

### Ejectment.

(Decided November 24, 1916.  73 South. 90.)

1. **Public Lands; Grant; Use; Implied Covenant.**—Where the act vested in the town of Tuscaloosa all the government's right to a tract called the river margin, on condition that the corporation should not sell or lease any part of it, and should set it aside for the benefit of the inhabitants, and of those resorting to it, with a provision for reverter if applied to other uses, there was no requirement of a statement of every use contemplated by the act, and the power of the municipality in respect to the tract was limited by the covenant implied from its acceptance of the land.

2. **Adverse Possession; Government Land; Grant.**—As to the trust property in this case, a disseisor as against the public could not acquire title thereto by adverse possession.

3. **Public Lands; Grant; Use.**—The original act having granted a tract of land to a town to appropriate it to the use of its inhabitants, and the grant having been accepted on condition that it could not be leased or sold, Congress could not afterwards change the conditions of the contract as to the future use of the property arising out of the terms of the grant, and hence, the only legal effect of the later act was to release the right of the government to declare a forfeiture under the terms of the original grant.

4. **Same; Forfeiture Proceedings.**—Where a grant of land was granted to a town by an act of Congress upon certain conditions as to use, with a provision for reverter, no forfeiture could be declared except by legislative or judicial action taken by the Federal government.

5. **Same; Conditions; Trust.**—A defendant in ejectment by a city, whether claiming the tract by grant or otherwise, would hold subject to the conditions, and burdened with the trust which attached to it in the hands of the city under the grant.

6. **Evidence; Ancient Maps.**—In ejectment for land claimed to be part of a tract of land granted to the city's predecessor by an act of Congress, describing the grant as the "river margin," an ancient map purporting to describe and locate the property as of the time when the act was passed, was admissible, as well as an ancient copy according to which the land had been conveyed for years.

7. **Ejectment; Identity; Evidence.**—In connection with an ancient map, evidence as to the location of storehouses, cornerstones and trees, tending legitimately to locate the property in question, and testimony that the land in suit was part of the tract known and called the "river margin," was competent.

8. **Evidence; Best and Secondary; Field Notes; Map.**—If the field-notes of the government survey, if the best evidence of the location of the tract, would not shed any light on the particular lot in controversy the admission of maps and parol testimony to identify it, was not error.

[Hughes v. City of Tuscaloosa.]

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Ejectment by the city of Tuscaloosa against James Hughes. Judgment for plaintiff and defendant appeals. Affirmed.

FOSTER, VERNER & RICE, for appellant. BROWN & WARD, and HARWOOD, McKINLEY, McQUEEN & ALDRIDGE, for appellee.

SAYRE, J.—The subject-matter of this suit is a parcel of land lying between the lots and the river at Tuscaloosa, a part of the tract called the "River Margin." The substantive right of the parties depends upon the act of Congress of May 26, 1824, which act, after vesting in the corporation of said town forever all the right and title of the United States to certain lots in the town of Tuscaloosa, said lots having already been set apart for public uses and designated in the plan of the town as "Court Square," "Market Square," "Jail Lot," "Spring," "Church," and Burial Ground," vested, also: "All of the right of the United States to the tract between the lots and the river at Tuscaloosa called the 'River Margin,' and that called the 'Pond,' and also of that called the 'Common;' on condition, however, that the corporation shall not lease or sell any portion of the last mentioned tracts, but that the same shall be appropriated to the purpose for which they were designated and set apart, as well for the benefit of the inhabitants of said town, as that of those resorting to or visiting the same, and if the same, or any part thereof, be applied to any other purpose, that it revert to the United States."

By this act the title of the United States to the "River Margin" passed out of the United States and into the town of Tuscaloosa in trust for the inhabitants of the town.

(1, 2) While, generally, the power of a municipal corporation to dispose of property is equal to its power to acquire, the power of the municipality in respect of the property in question was limited by the covenant, implied from its acceptance of the grant, and fixing the terms of the trust upon which it was held, to the effect that the "River Margin" should not be leased or sold, but should be appropriated to the purpose for which it was designated and set apart. The occasion does not demand a precise statement of every use Congress may have had in mind when making the grant, nor was it necessary that the proof should show more specifically than did the language of the grant the

purpose to which the "River Margin" had been set apart by usage or practice.   It was a public use or purpose, for it was preserved to the inhabitants of the town.   At the time of this grant the river at Tuscaloosa was the main avenue of that town's communication with the great outside world, and no doubt the public purpose to which its margin had been appropriated was the purpose commonly served by public riparian rights, chiefly the right of access, and the right of the public to that use at this time must rest upon the same principle as would its right to the use of a public street granted upon like conditions.—*Cincinnati v. White,* 6 Pet. 431, 8 L. Ed. 452.   Upon principle, this trust property could no more be disposed of by the corporation than any other trust property held by an individual, nor could a disseisor, as against the public, acquire title thereto by adverse possession.— *Douglass v. Montgomery,* 118 Ala. 599, 24 South. 745, 43 L. R. A. 376; *Reed v. Birmingham,* 92 Ala. 339, 9 South. 161.

(3-5)  The act of 1824 having granted this property to the municipal corporation for the use of its inhabitants, and the same having been accepted upon condition that it should not be disposed of by lease or sale, Congress could not afterwards change the conditions of the contract as to the future use of the property arising out of the terms of the grant.   The only legal effect of the act of 1888 was to release the right of Congress to declare a forfeiture under the terms of the grant.   No forfeiture has been declared, nor could any have ever been declared except by legislative or judicial action taken by the government of the United States.—*St. Louis, etc., Ry. Co. v. McGee,* 115 U. S. 469, 6 Sup. Ct. 123, 29 L. Ed. 446.   Appellant holds the property, whether claiming by grant or otherwise, subject to the condition and burdened with the trust that attached to it in the hands of the municipality.—*Mobile Transp. Co. v. Mobile,* 128 Ala. 335, 30 South. 645; *Cook v. Burlington,* 30 Iowa, 94, 6 Am. Rep. 649.

(6-8)  Appellant objected to the evidence offered for the purpose of identifying the property in suit as being a part of the "River Margin" granted by the act of 1824.   The original map showing the plan of the town, the "River Margin" included, that Congress had in mind when making the grant, had been lost and could not be found.   Appellee showed its title to the land in suit by evidence tending to identify it as a part of the "River Margin" named in the act of Congress.   The argument for a reversal on this point is that the evidence offered was secondary, that since it

was proved that the town as originally laid off comprised section 22 and the original corner stones of the section were still in existence in their original positions, a survey based upon the original field notes would have located all parts of the "River Margin," and evidence of such a survey would have been the best evidence of such location. The purpose of the testimony was to locate that parcel of land to which Congress referred as the "River Margin." Of course, Congress spoke with reference to a situation known to exist at the time. An ancient map, purporting to describe and locate the property as of the time when the act was passed, would have been competent; and so an ancient copy, according to which lands had been conveyed for many years, was properly admitted in evidence.—*Barker v. Mobile Elec. Co.*, 173 Ala. 28, 55 South. 364; *Webb v. Demopolis*, 95 Ala. 116, 13 South. 289, 21 L. R. A. 62. In connection with the map, evidence as to the location of storehouses, corner stones, and trees, tended legitimately to locate the property in question, and the testimony of Finnell that the land in suit was a part of a tract which, as far back as he could remember, had been known and called the "River Margin" by the citizens of Tuscaloosa, was, in the circumstances shown, competent and apt evidence tending to identify the land to which Congress referred in its grant denominating the subject of conveyance as "the tract between the lots and the river at Tuscaloosa, called the 'River Margin.'"—*Morgan v. Mobile*, 49 Ala. 349. It was not made to appear that there had ever been any field notes showing the matter in controversy. The government of the United States laid out the town of Tuscaloosa and sold the lots therein, but there is no reason for presuming that the original field notes showed more than the location of the corners of the section and the length and direction of its marginal lines, matters not in dispute in this case. The rest, we suppose, was shown by the map and by the map alone. So, conceding for the moment that the field notes of the government survey would have been the best evidence of the facts they purported to show, there was no error, since it did not appear that the field notes would have shed any light upon the particular matter in controversy.

We find no error in the record, and the judgment is affirmed. Affirmed.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.