187 So. 478

BAKER, State Health Officer, v. SINGLETON, State Comptroller.

3 Div. 285.

Supreme Court of Alabama.

March 16, 1939.

Thos. S. Lawson, Atty. Gen., Silas C. Garrett, III, Asst. Atty. Gen., and Steiner, Crum & Weil, of Montgomery, for appellant.

Jack Crenshaw, of Montgomery, for appellee.

THOMAS, Justice.

The bill by the State Health Officer was for a declaratory judgment.

The decree on the amended pleadings and assignment of errors challenging the correctness of the same present for review the decree of the circuit court. The decree from which appeal was taken was to the effect, "That under the facts and circumstances set out in the petitioner's bill, and the law in such cases made and provided, the State Health Department of the State of Alabama is not entitled to receive the full amount of its appropriation for the State fiscal year ending September 30, 1937.

"That the State Comptroller is not legally authorized to issue his warrant for the balance of said appropriation, in the sum of, towit: $80,187.47."

The purpose of the bill is stated, in a word, by appellant's counsel as follows: "* * * to have paid to the State Health Department the balance of its appropriation which was due it for the fiscal year 1936-37. It involves a construction of the McDaniel Amendment (Const. Art. 23, Gen.Acts 1933, Extra Session, p. 196), and the Budget and Financial Control Act (Gen.Acts 1932, Extra Session, p. 35), as applied to the fiscal operation of the State for the year 1936-37."

The issues raised by the amended pleadings in the case are: (1) Was there a sufficient balance in the General Fund of the State Treasurer on September 30, 1937, to pay the balance of all appropriations in full that were required to be paid therefrom; (2) is the Comptroller required to divide up the balance in the General Fund on September 30, 1937, among the balance of appropriations then outstanding and unpaid, or are such appropriations payable only in the proportion of the revenue "estimated by the Governor," as specifically required by the Budget and Financial Control Law; (3) was the comptroller authorized to issue the two warrants in question to the order of the State Health Officer for an amount exceeding $80,000 in the absence of an itemized, verified account, in the absence of outstanding claims against the State Health Department, such war-

rants being drawn to one not having a claim against the State of Alabama; (4) did the fact that the State Health Department spent $95,000 of its appropriation for central office expenses make the appropriation, or $95,000 of it, non-proratable as an essential governmental function under the decision of Abramson v. Hard, 229 Ala. 2, 155 So. 590; (5) if, at the end of the fiscal year, there was a balance on hand not sufficient to pay all appropriations in full, should the Court hold that all departments of the State which had had an opportunity to expend their appropriation during the fiscal year, but had failed to do so, were thereby barred as to any right in the balance on hand, and the Comptroller should then notify other departments of the balance on hand and give them an opportunity to incur claims and present warrants for the balance then remaining on hand; (6) did the oral representation by the State Health Officer to the Public Health Service that the entire appropriation would be forthcoming, amount to an encumbrance of the appropriation within the contemplation of the Budget and Financial Control Act; and (7) whether the Gen.Acts 1935, p. 771, repealed the Budget and Financial Control Act in so far as the Department of Health was concerned and also repealed the statutes requiring that the Comptroller only issue warrants upon itemized, verified claims and in favor of parties holding claims against the State or a department thereof?

█ The evidence was given orally before the court, rendering the decree, and is, therefore, supported by the prima facie presumption of verity that obtains. Hodge v. Joy, 207 Ala. 198, 92 So. 171.

It was shown that on September 30, 1937, there was a net balance in the General Fund, available for all claims, in the amount of $271,826.01, and there was an unpaid gross balance of appropriations to essential functions of government of $760,217.92, and a net balance of unpaid appropriations for essential governmental functions of $679,392.52, and unpaid appropriations for nonessential governmental functions in the gross amount of $564,004.03. It was further shown if the several departments of the State had expended their respective appropriations, on September 30, 1937, the end of the fiscal year, there would have been a deficit in the State Treasury.

The Comptroller testified as follows:

"The authority under which I set up certain appropriations as essential functions and certain as non-essential functions of government was as follows: When I came to prepare the budget, I took all of the Acts of the Legislature appropriating the money. Then I took the Supreme Court decision of Abramson v. Hard, supra. I called the Attorney General, Mr. Carmichael, Mr. Jim Screws, Assistant Attorney General, Mr. Frontis Moore, Assistant Attorney General and Mr. Charlie Rowe, Assistant Attorney General. I went down there and told them I needed their assistance in determining the essential and non-essential functions of government. By 'essential functions', I mean those on which would be paid one hundred cents on the dollar.

"They came to my office, * * *. I took the Acts, and I read the Acts to the Attorney General; made him read. Then they turned to Abramson v. Hard, Supreme Court Decision (229 Ala. 2, 155 So. 590), and read that; and they said it was essential, or non-essential, and Mr. Shaffer put it down on the work sheet. That's the way we determined what was essential and what was non-essential.

"That practice, and that allocation, made under the direction of the Attorney General, has been carried on ever since that time, * * *.

"I notified the State Health Department as to what part of their appropriation would be paid 100 cents on the dollar, and what part pro-rated, by telling Mr. Savage, and giving them a copy of the budget. That was prior to the fiscal year 1936-7.

"I first notified the non-essentials in October that they could spend 31% of their appropriation, then later on, in April, when we passed the liquor law and certain appropriations were taken out of the general fund and transferred to the Special Education Trust Fund, I prepared a new budget and notified them they could spend 65.57%. There were some departments that did not spend that entire amount. The total amount of those reversions of the 65.57 was $87,152.82. Of the essentials, the total reversions was $760,217.92. I treated those as reversions; that's the gross. The net amount of the reversions is $679,392.52. That is the amount of the appropriations for the essential functions of government that was unexpended at the end of the fiscal year. Without these reversions,

there would not have been any balance at all in the general fund of the State treasury on October 1, 1937. There would have been a deficit of $35,120.01.

"When Dr. Baker presented these two warrants, they were not accompanied by any itemized verified account. The full amount of the appropriation to the State Health Department was there for them during the fiscal year 1937-8. I don't know whether they spent it all."

The State Health Officer, Dr. Baker, testified that he made certain representations to the Federal Health Service in Washington to the effect that for the federal fiscal year beginning July 1, 1937, the Health Department of Alabama would have its appropriation available in full.

The testimony of the Financial Secretary of the State Health Department was to the effect that from October 1, 1937, to June 30, 1938, there was no reduction in the State's appropriation to the Health Department. The pertinent part of Mr. Savage's testimony was:

"I prepare the budget that is submitted to the United States Public Health Service. I make a draft of that budget and submit it to the State Health Officer for his approval, and after it is approved it is submitted with the signature of the State Health Officer to the Surgeon General for his approval. I am familiar with that budget, as it was finally approved and submitted to Washington.

"The witness was then asked the following question and gave the following answer:

"Q. Did that budget, Mr. Savage, include all of the Health Department's appropriations, including the amount involved in this suit here? A. I'm going to have to give a short explanation there, Judge.

"The Court: Yes.

"A. The government fiscal year operates from July 1st to July 1st. The State fiscal year operates from October 1st, to October 1st. So it is necessary, in June, when the budgets to the Federal agencies are prepared, to go on the basis that is then in operation; so that the budget for the period July 1st, 1936, through June 30th, 1937, was prepared on a basis of proration then in effect. But the budget operating from July 1st, 1937, through June 30th, 1938, was prepared on a basis of $430,000.00. So that during the last quarter of the State fiscal year, we were operating on a budget that employed the use of the full $430,000.-

00. So that when the question of the balance, on which this suit is brought, arose, we were operating on a budget that employed $430,000.00 of State money. So that, to answer your question, Mr. Baker, we were operating during the last quarter of that fiscal year on a budget that employed $430,000.00.

"On cross examination, the witness testified as follows:

"We received our full appropriation for the fiscal year just ended. From July 1, 1937 to October 1, 1937, we were under a proration of 65%, and we caught up from 31% to 65%. We did not spend the entire $430,000.00 during the Federal fiscal year. I cannot give you the figure as to what amount we expended during the Federal fiscal year, July 1, 1937 to June 30, 1938 without having my ledgers here, which I do not have. We caught up that balance, from July through September. We were not able to purchase materials that were needed under the 31% and when the 65% was available, we were able to get needed supplies and arsenical drugs and that's what we were using the money for. Our shortage was in the Federal fiscal year, which expired on June 30, 1937. I wish to amend that statement. For the first quarter of the next fiscal year, we operated on the first prorated basis and there was a deficit. In that quarter we were engaged in spending not only the 65% but we caught up for the whole year the difference in the 31% and the 65%."

The letter in evidence of the Surgeon General was:

"Treasury Department
Public Health Service
Washington

Nov. 30, 1937.

"Dr. J. N. Baker, State Health Officer, Montgomery, Alabama.

"Dear Doctor Baker: You will recall that approval of your budgets beginning July, 1937, was predicated on your being able to secure the full amount of money appropriated by your State legislature. It was understood that this would depend upon the yield from the sales tax.

"The Public Health Service feels the necessity of inquiring as to the status of your State appropriation. If for any reason you find that the State funds available are not sufficient to meet the State commitments in your budgets, it will be necessary to revise the budgets to correspond

with the funds at your disposal. Should this step become necessary, the Public Health Service will have to give consideration to a corresponding reduction in its commitments in the various budgets in like proportion. It is hoped, however, that your report will show that State funds are available in the full amount appropriated.

"Sincerely,

"Thomas Parran, Surgeon General."

This letter referred to the budget from July, 1937, to the end of the fiscal Federal year 1938, and not to the fiscal budget for previous year.

It is without dispute that the appropriations from October 1, 1937, were paid in full; that the comptroller immediately made up his budget after conference with the attorney general and other officials, and in accord with the decision of Abramson v. Hard, supra; and that the State Health Department made no attempt to question the propriety of the proration of its appropriation.

The appellant's witness testified as follows:

"After the decision of Abramson v. Hard, supra, all appropriations for payment of definite salaries, such as the salary of the State Health Officer, were set up to be paid in full and were paid in full. The first two items of any appropriation were deemed to be essential. The only specific salary enumerated is the State Health Officer's, and I fancy the others are lump sum salaries. My understanding is that the balance of my entire appropriation, including Pasteur treatment, was prorated just as the other departments of the State were prorated. All of the expenses of the State Department of Health, for fuel, lights, water, postage and printing, telephone and telegraph services, were paid. If you want the exact items of the outstanding claims of the Health Department on September 30, 1937, my financial secretary will have to answer that. I cannot give them to you myself. I should say that the outstanding claims would not amount to $31,000. All of our outstanding claims, that is, bills incurred, were paid out of the fiscal appropriation for the fiscal year 1936-37.

"In the conversation with the Federal Department of Health, he understood that we were operating under the Budget and Financial Control Law, and that he had been told that in past years my appropria-tion as fixed by the Legislature had been subject to proration. In view of the fact that the sales tax and the liquor tax were pending, I explained that to him, and made the statement that I felt that if they became law, my appropriation would be paid in full, and consequently there would be no interference with the plan that had been submitted, of the full $430,000. I told him that in the event the sales tax and the liquor tax did not become effective, and my appropriation was subject to proration, I would then be forced to think in terms of knocking down the existing set-up I had built up.

\* \* \* \* \* \*

"I suppose this is the first attempt to have the entire appropriation of the State Health Department classified as an essential function of government, inasmuch as under the Abramson-Hard decision of the Supreme Court, which I could never myself understand, the powers that be said that part of it was and part of it wasn't.

"The following question was then asked the witness, and the following answer made:

"Q. That was done right after that decision, and you have accepted that decision from the powers that be? A. What could I have done otherwise?

"On re-direct examination, the witness testified as follows:

"The reason why the State Health Department didn't have any outstanding unpaid bills at the close of the fiscal year is easy. I think I would have been very foolish to have gone ahead when notified by one of the powers that be that, 'You can only have so much,' to have gone ahead and disregarded those instructions and accumulated bills to the extent of my full appropriation. \* \* \*"

As we understand the evidence, there were not sufficient moneys in the General Fund on September 30, 1937, to pay the balance of the appropriation to the State Health Department in full, and this supports the judgment of the trial court, and that judgment is not plainly erroneous. Birmingham News Co. v. Barron G. Collier, Inc., 212 Ala. 655, 103 So. 839; Fleming v. Moore, 213 Ala. 592, 105 So. 679.

We may further observe that the Budget Act is prospective in its operation, and did not require the State Comptroller to divide funds on hand on September 30, 1937, among the outstanding appropria-

tions. Gen.Acts of Alabama, Extra Session 1932, pp. 44, 45 and 46, §§ 19, 20 and 22.

Section 19 of the last named Act is as follows: "* * * All appropriations now or hereafter made * * * are hereby declared to be maximum, conditional and proportionate appropriations, the purpose being to make the appropriations payable in full in the amounts named only in the event that the *estimated budget resources* during each fiscal year of the quadrennium for which such appropriations are made, are sufficient to pay all the appropriations in full. * * * In other words, the said appropriations shall be payable in such proportion as the total sum of all appropriations bears to the total revenues estimated by the Governor as available in each of said fiscal years. The purpose of this provision is to insure that there shall be no overdraft or deficit in the several funds of the State at the end of a fiscal year, and the Governor is directed and required to so administer this Act as to prevent any such overdrafts or deficits."

 It is argued that the language of the McDaniel Amendment to the Constitution, submitted by the Special Session of the Legislature of 1933, pp. 196 and 197, requires a contrary conclusion. We think a mere reading and comparison of the Budget and Financial Control Act and the constitutional section in question would show that they are in no way in conflict. The Budget Act reduces the appropriation to the *amounts estimated as available by the Governor.* As an additional safeguard the McDaniel Amendment requires that: "In case there is, at the end of any fiscal year, insufficient money in the State Treasury *for the payment of all proper claims presented to the State Comptroller for the issuance of warrants,* the Comptroller shall issue warrants for that proportion of each such claim which the *money available* for the payment of all said claims bears to the whole, and such warrants for such prorated sums shall thereupon be paid by the State Treasurer." Gen.Acts Ex. Session 1933, pp. 196, 197. (Italics supplied.)

Counsel for the appellant argue this requires that all funds on hand in the state treasury be divided among all departments of the state holding appropriations. Such a construction, however, overlooks the difference between an *appropriation* and a *claim* presented to the *State Comptroller for the issuance of a warrant.* That dis-

tinction has been maintained by the legislature throughout the Budget and Financial Control Act, the sections of the Code and this constitutional amendment. The fact that neither the Legislature nor the constitutional amendment required that all funds available be divided among appropriations indicates the conclusion that the legislature did not intend to require all moneys on hand to be divided among outstanding appropriations at the end of the fiscal year.

The word "estimated," twice used by the Legislature, can have only one meaning. The practical effect is exactly the same as the construction contended for by the appellee. Under the wording of the statute, if the Governor's estimate of resources is too high, so that at the end of the year there is not enough money on hand to pay even the reduced appropriations, then the constitutional amendment requires the distribution of the moneys on hand between the outstanding claims for warrants. If, on the other hand, the Governor's estimate was too low, or for any reason some of the departments of the State did not expend the amounts to which they were entitled, and a balance is on hand, this balance is merely carried forward for the succeeding year, and is available for payment of all appropriations for the following year. The same departments of State are entitled to it in the same proportions as they would be if it were divided up on midnight September 30th. The physical impossibility of determining what amount is available at midnight, September 30th, was probably well known to the Legislature and no doubt this is the reason why they expressly failed to provide that all moneys on hand should be divided among outstanding unpaid appropriations. The Comptroller's construction of the Budget and Financial Control Law, giving to the words used by the Legislature their exact meaning, was not only proper, but the practical construction, and there is no authority in law requiring the Comptroller to divide up the funds on hand at the end of the fiscal year among the outstanding appropriations, regardless of whether those departments have outstanding claims.

 It cannot with reason be insisted that representations made to the Federal Public Health Service, having been advised of the terms of the Budget Act of this State, and knowing that the State Health Department was subject to its terms, were

not an encumbrance within the meaning of the Budget and Financial Control Law of this State. The Budget and Financial Control Law was the law that controlled and it supported the action of the comptroller in making an estimated budget in the first place, and later in making further estimates and amending the budget that obtained or affected the appellant's department.

What we have said indicates our view that the State Health Officer acted in entire good faith with the Federal Officials having control of Federal administration of health departments. But whether the Federal authorities were fully informed or not is a matter immaterial to the conclusion which we have reached, and our review of the testimony in this respect is merely indicative of good faith on the part of all.

The Act of 1935 [Gen.Acts Alabama, Regular Session 1935, p. 771], relative to the Department of Health, provides as follows: "Section 1. All funds or appropriations now or hereafter made available for the preservation, furtherance, or maintenance of public health in this State shall be expended in accordance with an annual budget prepared by the State Health Officer with the approval of the State Board of Health for the purposes enumerated in Section 1159 of the Code of Alabama of 1923 and for such other purposes deemed essential and necessary by the State Board of Health for the protection of the public health of the State, provided however that the total expenditures provided for in said budget shall not exceed the total funds or appropriations made available for public health work during that year. * * *"

We may remark that the above quoted Act of 1935 and its provisions did not repeal the Budget Act by implication. Such repeals are not favored. Davis v. Browder, 231 Ala. 332, 165 So. 89; Alford v. Claborne, 229 Ala. 401, 157 So. 226; Southern Industrial Institute v. Lee, 234 Ala. 404, 175 So. 365.

After all that may be said of the effect of the constitutional amendment, the several statutes that obtain, and the constructions thereof, it results (1) that the word "budget" being essentially "an estimate," the budget set up by the Governor and the Comptroller for the various departments of state was necessarily prospective in operation; (2) that on midnight of the last day of the State's Fiscal Year, the respective appropriations of the many departments of state may or may not have been paid in full (in compliance with the budget prepared by the Governor and the Comptroller) according to the facts that obtain as to that department; (3) that such respective payments to the many departments of state necessarily affect the moneys remaining in the general fund for such fiscal year; (4) that such balance on hand in the general fund with the treasurer must so remain, accrue and be applied on the respective appropriations and budgets for the ensuing fiscal year; and (5) that no part of such balance or amount in the general fund at midnight on September 30th is, or may be made, available or payable except to the respective estimated budgets for the expiring fiscal year as to the several departments; but that lawfully incurred claims under Sections 20 and 22 of the General Acts of 1932, Ex.Sess., pp. 45, 46, that have been made and incurred within the estimated budget, may be paid within a reasonable time after September 30th, and the balance thereafter remaining in the treasury shall revert to the general fund.

It follows from the foregoing that the ruling of the trial court is without error, and the judgment of the trial court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.