195 So. 448

**STATE v. INMAN.**

**8 Div. 33.**

Supreme Court of Alabama.

Feb. 22, 1940.

Rehearing Denied April 4, 1940.

Thos. S. Lawson, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for appellant.

Key & Key, of Russellville, for appellee.

THOMAS, Justice.

The action was ejectment. A preliminary question in this case is reported as State v. Inman, 238 Ala. 555, 191 So. 224.

The lands at issue were granted to the State of Alabama for internal improvement purposes by the Acts of Congress approved September 4, 1841 (5 Stat. at Large, 453), and August 11, 1848 (9 Stat. at Large, 281); Acts of Alabama, 1849–50, p. 82.

It is observed that this payment is required to be made to the State of Alabama. The Act of Congress of March 2, 1819, was to enable the people of Alabama Territory to form a Constitution and State Government and for the admission of such state into the Union on an equal footing with the original states. The sixth section of said Act (Stat. at Large, Vol. 3, p. 489 et seq.) provided that the following propositions were offered to the Convention of said Territory of Alabama when formed for their free acceptance or rejection and which, if accepted by the Convention, were declared to be obligatory upon the United States. First, the Convention was offered every sixteenth section in townships for the use of schools and five per cent of the net proceeds of land sold after September 1, 1819, was to be reserved for making public roads, canals, etc., and for improving the navigable rivers, and an entire township of public lands for the seminary of learning.

The effect of the statute of September 4, 1841, was that certain states (among which Alabama is named) be paid ten per cent of the net proceeds from the sale of public lands therein to be applied to internal improvements, such as roads, railways, bridges, canals and improvement of water courses and the draining of swamps. The 17th section of such Act of Congress (5 Stat. at Large, p. 457, § 17) is in the following words: "Sec. 17. And be it further enacted, That the two per cent. of the nett proceeds of the lands sold by the United States, in the State of Alabama, since the first day of September, eighteen hundred and nineteen, and reserved by the act entitled 'An act to enable the people of the Alabama Territory to form a constitution and State government, and for the admission of such State into the Union on an equal footing with the original States,' for the making of a road or roads leading to the said State, be, and the same is hereby, relinquished to the said State of Alabama, payable in two equal instalments, the first to be paid on the first day of May, eighteen hundred and forty-two, and the other on the first day of May, eighteen hundred and forty-three, so far as the same may then have accrued, and quarterly, as the same may thereafter accrue: Provided, That the Legislature of said State shall first pass an act, declaring their acceptance of said relinquishment, and also embracing a provision, to be unalterable without the consent of Congress, that the whole of said two per cent. fund shall be faithfully applied, under the direction of the Legislature of Alabama, to the connection, by some means of internal improvement, of the navigable waters of the bay of Mobile with the Tennessee river, and to the construction of a continuous line of internal improvements from a point on the Chattahoochie river, opposite West Point, in Georgia, across the State of Alabama, in a direction to Jackson in the State of Mississippi."

The effect of the Act of Congress of August 11, 1848, was to broaden the purposes of internal improvements provided for in the foregoing noted Acts of Congress to the following extent: that certain lands granted to the State of Alabama for internal improvements will be "applied [by said State] for the use of schools in such townships of said State as in which the sixteenth or school sections are comparatively valueless, and the legislature may locate said lands in any legal subdivisions, not less than forty acres, within the limits of said State." 9 Stat. at Large, p. 281.

The legislature of this State on February 13, 1850, passed an act to locate lands for valueless sixteenth sections, providing among other things, that

"Whereas, by act of Congress, approved August 11th, 1848, the State of Alabama is authorized to apply certain lands theretofore granted to the said state for internal improvements to the use of schools in the valueless sixteenth sections therein; and whereas it is important that provisions be made for the location and sale of said lands: therefore—

"Sec. 1. Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened, That any person who may wish to make a purchase of any of said lands subject to be located by this state, under the said act, shall, upon application etc. * * *." Acts of Alabama, 1849-50, p. 82.

The foregoing declares the status quo of the several land grants and the acceptance thereof by the State of Alabama through the Act of the Legislature of Alabama of 1849-50, p. 82. When the said land grants were made for internal improvements within the State of Alabama there was no provision of law subjecting the State of Alabama to the statute of limitations. Clay's Digest, pp. 326-329.

It was by Section 2475 of the Code of 1852 that the State was made subject to the statute of limitations of twenty years in actions for the recovery of real and personal property and actions upon a judgment or decree of any court of the State of Alabama, of the United States, or of any state or territory of the United States. Such provisions were carried into the subsequent Codes. Such provision is given statement in the Code of 1896 in Section 2794, as follows:

"2794. *Limitation of twenty years.* Within twenty years,—

"1. Actions at the suit of the state against a citizen thereof, for the recovery of real or personal property...

"2. Actions by or for the use of any township, for the recovery of sixteenth section or other school lands belonging to the township.

"3. Actions upon a judgment or decree of any court of this state, of the United States, or of any state or territory of the United States."

In the Code of 1907, Section 4830, which was effective on May 1, 1908, as designated and appointed in the Governor's Proclamation of April 1, 1908, the statute of limitations in the respect here pertinent provided that there "is no limitation of the time within which the state may bring actions for the recovery of any of the land mentioned in section 3859 of [the Code of 1907]." And said Section 3859 of the Code of 1907 is as follows: "All actions for the recovery of land, or the possession thereof, belonging to the state, and sixteenth section lands, school indemnity land, and all other school lands, and lands of the University of Alabama," etc. (naming state institutions) "and of any public educational or governmental institution of this state, shall be brought by and in the name of the State of Alabama, or in the name of the State of Alabama for the use of the schools or other educational or governmental institution to which, or for the use of which the lands sued for were donated, granted, or purchased or held."

It will be noted that the amendment of Section 2900 of the "Revised Code" (Code of 1867) as affecting actions to be brought within ten years provided that it should not apply to actions brought by the trustees of any township for the recovery of sixteenth section or other school lands belonging to the township. It will be noted that this action does not affect the lands for which the instant suit is brought.

The provision of the Code of 1923, Section 8939, is to the effect that there are no limitations to certain specified actions by the state to recover lands mentioned in Section 7475 of said Code. Section 7475 Actions by state, for lands of state, and educational or charitable institutions, provides that "all actions for the recovery of land, or the possession thereof, belonging to the state, and sixteenth section lands, school indemnity lands, and all other school lands [and lands of designated institutions] and of any public educational or governmental institution of this state, shall be brought by and in the name of the State of Alabama, or in the name of the State of Alabama for the use of the schools or other educational or governmental institutions to which, or for the use of which the lands sued for were donated, granted, purchased or held."

Under several of the statutes of limitation it has been declared that on general principles the statute of limitations will not run against the state in the absence of statutes making the state subject to such limitations. State Board of Adjustment v. State, 231 Ala. 520, 165 So. 761; Swann et al. v. Gaston, 87 Ala. 569, 6 So. 386.

■ In the case of State of Alabama v. Schmidt, 232 U.S. 168, 34 S.Ct. 301, 302, 58 L.Ed. 555, a decision of the Supreme Court of the United States was invoked to review the case of State v. Schmidt, 180 Ala. 374, 61 So. 293. The attorney general for the state urged that in accepting the proposal upon which the state was admitted into the Union, and the use or purposes to which sixteenth section lands might be put except the use for schools, the United States retained for all other purposes or uses, and that a statute of limitations whereby lands granted by the United States to a specific use are diverted from that use into private ownership is in conflict with the Act of Congress making the grant and is void.

It was further insisted that the state had no power to divert sixteenth section lands from the specific use for schools to which they were dedicated by the Act of Congress. The acceptance of the proposals of the Act of Congress of March 2, 1819, created a contract between the United States and the State of Alabama, and the attempted diversion of the State of Alabama from the use thus granted by a statute of limitations violated the obligations of this contract and was void. The opinion was rendered by Mr. Justice Holmes, wherein he said: "The above-mentioned act of Congress, under which Alabama became a state, provided that section 16 in every township 'shall be granted to the inhabitants of such township for the use of schools.' Of course the state must admit, as it expressly agreed, that these words vested the legal title in it, since it relies upon them for recovery in the present case. * * * In some cases the grant has been to the state in terms; but in whichever way expressed, probably it means the same thing, so far as the legal title is concerned. Certainly it has the same effect with regard to the scope of the state's legal control."

The holding was that the title of the State of Alabama to sixteenth section school lands given to such state by the act of March 2, 1819 (3 Stat. at Large, pp. 489–491, Chapter 47, Section 6) will be extinguished by adverse possession for the length of time prescribed by the state statute of limitations.

The question of statute of limitations has been dealt with by several decisions of this court and a consideration of the several original land grants, under the terms of the several statutes of limitations of this state, bring the facts of the instant case within the influence of the following decisions: State v. Michie, 222 Ala. 682, 133 So. 734; Tennessee, Coal, Iron & Railroad Co. v. Linn, 123 Ala. 112, 26 So. 245, 82 Am.St.Rep. 108; Cox v. Board of Trustees of University of Alabama, 161 Ala. 639, 49 So. 814; State Board of Adjustment v. State ex rel. Sossaman, 231 Ala. 520, 165 So. 761; State v. Schmidt, 180 Ala. 374, 61 So. 293; Alabama v. Schmidt, 232 U.S. 168, 34 S.Ct. 301, 58 L.Ed. 555.

The case strongly relied upon by the appellant, Hughes v. City of Tuscaloosa, 197 Ala. 592, 73 So. 90, is to be distinguished from the instant facts under the several land grants indicated and the decisions holding that the statute of limitations runs against the state. This is made plain by the statements contained in the third and fourth headnotes of the last cited case, which read as follows:

"The original act having granted a tract of land to a town to appropriate it to the use of its inhabitants, and the grant having been accepted on condition that it could not be leased or sold, Congress could not afterwards change the conditions of the contract as to the future use of the property arising out of the terms of the grant, and hence, the only legal effect of the later act was to release the right of the government to declare a forfeiture under the terms of the original grant.

"Where a grant of land was granted to a town by an act of Congress upon certain conditions as to use, with a provision for reverter, no forfeiture could be declared except by legislative or judicial action taken by the Federal government."

There was no such clause in the instant acts of Congress as that construed in the Act of 1824, granting the property to the municipal corporation of Tuscaloosa for the use of its inhabitants upon condition that it should be disposed of by lease or sale, etc., with a "provision for reverter." What we have said is in line with the construction placed upon the land grants of Congress as construed by Mr. Justice Holmes in Alabama v. Schmidt, supra.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing.

THOMAS, Justice.

We should observe that Article XII, Section 240, first appeared in the Constitution of 1868 (Doe ex dem State Land Co. v. Factors' & Traders Ins. Co., 166 Ala. 63, 51 So. 991). The statutory system governing actions and suits by the state (Code of 1923, §§ 5644-5654) came to us by antecedent codes, some of the provisions being as early as the Code of 1852, § 2137 et seq. The provisions in § 5654, Code of 1923, first appear in the Code of 1886, § 79, and authorize the governor whenever the interests of. the state may require to order and direct suits "to be brought in the name of the state in any foreign jurisdiction, for the recovery of any moneys due or owing to the state, or upon any claim or demand on which the state is entitled to sue," etc., and also authorize the governor "to pay the costs or expenses thereof and to order the state auditor to draw a warrant on the treasury." Bradford v. State, 201 Ala. 170, 77 So. 696; Id., 204 Ala. 46, 85 So. 435; Young v. City of Tuscumbia, 217 Ala. 683, 117 So. 306; National Surety Co. v. State et al., 219 Ala. 609, 123 So. 202.

The statutes providing the right of suit by the state for its different departments have been applied in many cases, for example, State v. Clements, 217 Ala. 685, 117 So. 296; Nat. Surety Co. v. State, supra; Williams, Supt., v. Pickens County, 230 Ala. 395, 161 So. 507.

■ The broad language employed by Section 240 of the Constitution has been held as not intending to destroy indirectly the immunity reserved by the state in Section XIV of the Constitution, declaring that the State of Alabama "shall never be made a defendant in any court of law or equity." Such section first appeared in the Constitution of 1875, Article I, § XV. Such is the effect of the decisions in Alabama Girls' Industrial School v. Reynolds, 143 Ala. 579, 42 So. 114; and in Consolidated Indemnity & Ins. Co. v. Texas Co., 224 Ala. 349, 140 So. 566, 567, it is aptly observed by Mr. Justice Foster for this court that the State is a body politic or political society organized by common consent for mutual protection and defense, *exercising such powers as are necessary* for the purpose. "It combines in one word all of its departments." It "may contract" and *"may sue in the courts,"* and has "some corporate as well as governmental qualities"; and is not "sub-ject to suit in view of section 14 [of the Constitution]." Askew v. Hale County, 54 Ala. 639, 25 Am.Rep. 730.

We note that Sections 15 and 16 of Article I of the Constitutions of 1865 and 1868 provide that, "suits may be brought against the state, in such manner, and in such courts, as may be by law provided." The constitutions of 1875 (Article 1, § 15) and 1901 (Article I, § 14) contain the like provision that "The State of Alabama shall never be made a *defendant* in any court of law or equity. [Italics supplied.]"

In State Docks Commission v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582, it is said: " * * * section 14 of the Bill of Rights of the Alabama Constitution provides that the state shall never be made a defendant in any court of law or equity. The state cannot consent to such a suit. * * *"

See also Ballenger Const. Co. v. State Bd. of Adjustment, 234 Ala. 377, 175 So. 387.

■ It will be noted that the right to court costs in any case is dependent on statutory provisions, there being no such right at common law. Ex parte Cudd, 195 Ala. 80, 70 So. 721; 5 Alabama Digest, Costs, page 400 ☞1 et seq.

In State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 501, 502, 179 So. 541, 547, it is declared:

" * * * No judgment is rendered for the costs of the trial in the circuit court, since no judgment can be rendered against the state. Collier v. Powell, 23 Ala. 579; Constitution, § 14. * * *

"Our attention has been called to section 7221, Code, which authorizes such a judgment in civil suits in which the State is plaintiff. Whether that statute contravenes section 14, Constitution, is not necessary for us to decide. This is not such a case. * * *"

This question is now presented by the attorney general for decision.

In Section 6518, Code, it is provided that the "state may sue in circuit court in chancery or equity matters, and the suit is governed by the same rules as suits between individuals. * * * and if unsuccessful, the state is liable for costs as individual suitors are. * * *"

The general provisions in Section 7221 of the Code are: "The successful party in all civil actions is entitled to full costs

for which judgment must be rendered, unless in cases otherwise directed by law, or by the judgment of the court. * * * and this provision is applicable in all cases in which the state is a party plaintiff in civil actions as in cases of individual suitors. * * *"

Like provisions are contained in the preceding codes.

It is necessary that we construe these statutes in the light of the constitutional provisions that obtain. Sections XIV, 213, Amendment Article XXIII, Skinner's Constitution, § XIV, p. 127; Article XXIII, Section 216, Amendment XXVI, p. 987.

█ The rules of statutory construction are understood. Jefferson County v. Busby, 226 Ala. 293, 148 So. 411, 413. In this case it is said, on ancient authority, that "Where a statute is fairly susceptible of two interpretations, one of which will uphold, and the other defeat, its constitutionality, the former construction will be adopted, even though it be the less natural, 'ut res magis valeat quam pereat.' * * *"

█ In this case the wording of the statute is not misunderstood, and, therefore, the decision as to constitutionality vel non is not to be aided by administrative construction. Bozeman v. State, 7 Ala.App. 151, 61 So. 604, Id., 183 Ala. 91, 63 So. 201; City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159. That is to say, these statutes will be construed and applied under the provisions of the present constitution.

There are several decisions holding that in civil cases, where the state was plaintiff, costs may be taxed in adverse judgment against the state and counties. The State, use of Coosa County, v. Parker, 83 Ala. 269, 270, 3 So. 552 (wherein it was held that a judgment may be rendered for costs, a judgment scire facias); State v. Donaldson, 209 Ala. 400, 96 So. 617 (wherein the subject was tax valuations and costs were adjudged against the county, the state and county being parties plaintiff); Bynum Bros. v. State, 216 Ala. 102, 112 So. 348 (where the proceeding was by the state for taxes and it was held that the provisions of § 7221, Code, may be applied as to court costs). The effect of § XIV of the Constitution was not considered in either of these decisions.

It is now insisted by the state's counsel that a judgment for imposition of costs against the state, in this case, where the state is plaintiff, under these statutes, had not the effect of making the state a party defendant within the express inhibition of Section XIV of the Constitution. The state, coming into court and making itself a party, is thus not sued within the inhibitions of Section XIV. It is further insisted that a judgment for such costs against the state was not the imposition of a "debt" against the state, within the meaning of Article XXIII of the Amendments to the Constitution.

█ It will be noted that Sections 6518, 7221, Code, declare that the taxation of costs may be against the state in civil actions where the plaintiff is the state. These statutes, as contained in the Code of 1923, come to us from the Code of 1867, under the constitution of 1865, Articles 1 and § 15, that permitted such suits against the state as may be provided by law. See Code of 1867, §§ 2779, 3323. Thus the statutes were unchanged, but the constitutions touching the subject have been materially changed in §§ 14 and 213.

We forego a decision of the question challenging these ancient statutes under Section XIV of the Constitution, until there is a consideration of the effect of the administration to a judgment of these statutes against the state, under § 213 of the Constitution and warrant amendment, Article XXIII, number XXVI in Skinner's Constitution Annotated, p. 987. In Re Opinions of the Justices, 227 Ala. 296, 149 So. 781, it is declared that the warrant amendment, Article XXIII, No. XXVI, superseded Section 213 of the Constitution of 1901. General Acts, Extra Session 1933, p. 196.

Under the Parker case, supra, the Donaldson case, supra, and the Bynum Bros. case, supra, the judgment for costs was primarily laid on the counties where the trial was had, notwithstanding the fact that the state was a party-plaintiff: At an early date (1852) this court said that no costs can be adjudged against the state in a case where it "is plaintiff and fails in its suit." And it is observed that we have no statute which allows costs in such case "and in the absence of legislation upon the subject, costs cannot be adjudged against the State." Collier, Governor, v. Powell & Bradley, 23 Ala. 579; 59 C.J. p. 332. This case is cited in

State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 501, 179 So. 541. A careful consideration of the authorities touching Section 14 of the Constitution would not render §§ 6518 and 7221 of the Code, under such authorities, unconstitutional.

Thus we are brought to the ascertainment of the meaning of the word "debt" interdicted by the Article XXIII, No. XXVI, Amendment to § 213 of the Constitution. Skinner's Constitution of Alabama Annotated, p. 987. This is well illustrated in Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695, the river bridge case; In re Opinions of Justices, 220 Ala. 539, 126 So. 161, appropriation to state normal schools; In re Opinions of Justices, 225 Ala. 460, 143 So. 900, for leasing the bridges; Hall v. Blan, State Treasurer, 227 Ala. 64, 148 So. 601, for relief of school funds; In re Opinions of Justices, 227 Ala. 296, 149 So. 781; In re Opinions of Justices, 227 Ala. 289, 149 So. 775, denied to air service commission; Rogers v. Garlington, 234 Ala. 13, 173 So. 372, act freeing the river toll bridges.

The pertinent part of the last mentioned amendment, as contained in Skinner's Alabama Constitution Annotated, Article XXIII, No. XXVI, p. 987, is as follows: "After the ratification of this Constitution, no new debt shall be created against, or incurred by the State, or its authority except to repel invasion or suppress insurrection, and then only by a concurrence of two-thirds of the members of each house of the Legislature, and the vote shall be taken by yeas and nays and entered on the journals; provided, the Governor may be authorized to negotiate temporary loans. * * * Provided, further, that this Section shall not be so construed as to prevent the Governor from paying interest at the rate of not exceeding 5% per annum, payable semi-annually from July 1, 1933, on the floating indebtedness of the State. * * * All warrants and/or instruments issued or to be issued representing such indebtedness shall be a direct obligation of the State, and for the prompt and faithful payment of the principal and interest thereon, the full faith and credit of the State is hereby irrevocably pledged, and such warrants and/or instruments shall be exempt forever from all taxes of every kind. Any Act *creating or incurring any new debt against the State, except as herein pro-* *vided for, shall be absolutely void.* To create a sinking fund for the prompt and faithful payment of the floating indebtedness of the State, and interest thereon, the net proceeds of any income tax which may be levied by the Legislature pursuant to law is hereby pledged. To prevent future deficits in the State Treasury, it shall be unlawful from and after the adoption of this amendment for the State Comptroller of the State of Alabama to draw any warrant or other order for the payment of money belonging to, or administered by, the State of Alabama upon the State Treasurer, *unless there is in the hands of such Treasurer money appropriated and available for the full payment of the same. * * *.*"

In Hall v. Blan, State Treasurer, 227 Ala. 64, 148 So. 601, 607, it is declared of Section 213 of the Constitution, as follows: "* * * The Legislature cannot create debt by appropriations in excess of revenues * * *. Nor can executive officers create debt by issuance of warrants pursuant to appropriations, notwithstanding the holder has rendered a public service, advanced money, or materials for governmental uses on the faith that the state, through its constituted authorities, would provide the means of payment. * * *"

See Opinions of Justices, 237 Ala. 286, 186 So. 485; Keller v. State Board of Education, etc., 236 Ala. 400, 183 So. 268; Harman v. Alabama College, 235 Ala. 148, 177 So. 747.

The word "debt" as contained in the amended Section 213 of the Constitution, and as applied in several cases cited is discussed at length in Alabama State Bridge Corporation et al. v. Smith, 217 Ala. 311, 316, 116 So. 695, 699. It is therein observed: "Our judgment is that 'debt,' within the meaning, the purview, the whole content, of the constitutional provision, is that which the state in any event is bound to pay, an obligation secured by the general faith and credit of the state. * * * There is no promise on the part of the state to pay in any event; there is no pledge that there will be a surplus of any fund; there is no pledge of the general credit of the state; there will be no debt within the meaning of section 213."

The same definition of "debt" is contained in Keller v. State Board of Edu-

cation of Alabama, 236 Ala. 400, 408, 183 So. 268, 275, when the court said:

"Is the proposed bond issue and resolution providing for its amortization within the inhibition of any statutory or constitutional provision? We have indicated that the same is not within the prohibition of the constitution. Alabama College v. Harman, 234 Ala. 446, 175 So. 394. This holding is supported by the following authorities: In re Opinions of the Justices, 226 Ala. 570, 148 So. 111; Oppenheim v. Florence, 229 Ala. 50, 155 So. 859; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774; Harman v. Alabama College, 235 Ala. 148, 177 So. 747.

"It should be stated at the present time that the resolution of the board, or governing body, of the institution embodied the offer of the Federal Emergency Administration of date of July, 1938, containing among other things the following:

"'Payable as to both principal and interest solely from and secured by an exclusive first pledge of and lien upon an amount of the gross fees charged each and every student for the right to use the Project (after deduction only of the reasonable expenses of operation and maintenance thereof) sufficient to pay the interest on and principal of the Bonds, as the same become due, and to maintain an adequate reserve therefor.'"

■ Appropriations within or in excess of the current revenues of the state are tested by the word *"debt"* as contained in Section 213 of the Constitution and as such word *has been defined as meaning that which "the state in any event is bound to pay [beyond its current revenues and as] an obligation secured by the general faith and credit* of the state." Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695, 699 (the river bridge corporation). This was the test applied in many recent decisions among which are the following: Keller v. State Board of Education of Alabama, 236 Ala. 400, 183 So. 268; Alabama College v. Harman, 234 Ala. 446, 175 So. 394; In re Opinions of the Justices, 226 Ala. 570, 148 So. 111.

■ With this understanding of a suit against the state that is denied by Section 14 of the Constitution, we adhere to the decision in State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498, that the state may not be made a defendant in any case, and a judgment cannot be rendered against the state. In that case the Pullman-Standard Car. Manufacturing Company was the actor in the appeal against the state.

■ We have indicated the class or character of debts dealt with in the amendment to the Constitution as contained in Article XXIII, No. XXVI, Skinner's Code Annotated, p. 987; General Acts 1933, Extra Session, p. 196. We are of the opinion that costs in a civil case incurred and ascertained against the state, where the state comes into court as a plaintiff or a complainant and is in adverse judgment, is not such a "debt" as is inhibited by Article XXIII, No. XXVI of the Constitution. Skinner's Code Annotated, p. 196, supra. Such a suit does not make the state a defendant within the meaning of Section 14 of the Constitution.

■ It is urged that Sections 6518 and 7221, Code, carry a continuing appropriation for costs incurred by the state as a plaintiff in adverse judgment in civil suits sought to be prosecuted and maintained by the state for the purpose of the due functioning of its several departments of state government. This is a necessary exercise of the right of sovereignty by the state and its several coordinate branches of government, departments and agencies necessary to the recovery in the courts of public properties and current revenues, and is a due expenditure of the *state's appropriated current revenues.*

Such is the result of the earlier decisions adverted to at the outset, and of the more recent decisions now to be considered. In State ex rel. Turner, v. Henderson, Governor, 199 Ala. 244, 74 So. 344, L.R.A. 1917F, 770, it was held: "Acts 1915, p. 719, authorizing the Attorney General to employ with the approval of the Governor necessary counselors and attorneys, section 8 of which appropriates money sufficient to meet the expenses incurred under the act, is a valid appropriation within Const.1901, § 72, providing that no money shall be paid out of the treasury except upon 'appropriation' made by law, though no definite sum or maximum which cannot be exceeded was thereby fixed."

In Southern Industrial Institute v. Lee, 234 Ala. 404, 175 So. 365, 367, we declared: " * * * we entertain the view the ap-

propriation act in question was not a 'permanent' one within the meaning of section 10, and, therefore, was not repealed. This section (section 22), it is to be observed, provides in part that 'appropriations for the purchase of land or the erection of buildings or new construction shall continue in force until the attainment of the object or the completion of the work for which such appropriations are made,' and we think, in any event, this evinces a legislative policy that appropriations of this character should not lapse, but that the work should be completed."

And in Re Opinion of the Justices, 234 Ala. 555, 176 So. 367, the effect of the decision was:

"The statute authorizing state to purchase such realty near state capitol as might be necessary in designated state representatives' judgment and appropriating sufficient sum out of state treasury to pay therefor specifically authorizes purchase of such property and sufficiently appropriated money for payment of price (Code 1923, §§ 932–934).

"The Budget and Financial Control Act and constitutional amendment of 1933 do not affect or repeal statute appropriating money to pay for realty purchased by state, but make expenditure thereof dependent on approval of Governor, Chief Justice, and Attorney General and condition of state treasury (Code 1923, §§ 932–934; Gen.Acts 1932, Ex.Sess., p. 35; Const. 1901, Amend. No. 24)."

And in our last case, on the subject of continuing appropriations, In re Opinion of the Justices, 237 Ala. 377, 186 So. 731, the doctrine of the case of State ex rel. Turner v. Henderson, Governor, 199 Ala. 244, 74 So. 344, L.R.A.1917F, 770, was approved, as follows:

"A statute authorizing Governor to fix salaries of officers and employees not to exceed a specified amount, as modified by proposed amendment purporting to appropriate 'a sum of money sufficient to pay the salaries' out of general fund or special funds from which such salaries were payable, made an 'appropriation' within constitutional requirement, and sufficiently defined funds from which salaries were to be paid. Const.1901, § 72. * * *

"While the appropriation is indefinite in amount, such appropriations have been approved in our former decisions. State ex rel. Turner v. Henderson, Governor, 199 Ala. 244, 74 So. 344, L.R.A.1917F, 770."

Such are the earlier and recent decisions of this court under which the several departments of the state government have been operated and functioned and expended its current and available revenues under the sovereignty of the state.

The right and necessary expenditure by the state, under the Budget System and that by its several departments, its duly authorized officials, agents and agencies, of current revenues (under the general and special funds), are not to be confounded with the undue and unlawful effort to hypothecate or pledge the future revenues of succeeding years and administrations of government that are denied by the Constitution and its amendments and by the decisions we have indicated. Baker v. Singleton, 237 Ala. 394, 187 So. 478.

It may be well to indicate that court costs adjudged against the state may be paid out of a due appropriation to any department for which the name of the state is employed and is acting, or out of the available general fund of the state when so acting and suing for the state's general fund, revenues or properties. If there are no such general or special funds that may meet such payment, under the Budget Act, then such costs may be allowed and paid out of the appropriation to the Governor's contingent fund or the Governor's emergency fund, or from available funds appropriated for the State Board of Adjustment and allowed as a proper claim against the state. Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377, 175 So. 387; Turner v. Lumbermens Mut. Ins. Co., 235 Ala. 632, 180 So. 300; General Acts 1935, p. 1164; General Acts 1936–37, Sp.Sess. p. 205.

As touching the power of the State Board of Adjustment, under the original and amended acts, this court has observed that the legislature recognizes the circumstances calling for the appropriation to meet and satisfy moral and legal duties that ought to be made by legislative enactment and appropriation. The act contains appropriations to meet such obligations respectively, as the legislature has specified and which are to be paid out of the appropriation. To this end the legislature "set up the Board of Adjustment to ascertain the persons who are included in the appropriations, the nature of their claims,

and their amount." When this is done the status of the claimant is as though the legislature had passed an act appropriating that amount to be paid him out of the treasury. Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377, 380, 175 So. 387, 389.

When the instant statutes for costs in civil cases where the state is a party plaintiff are construed, as we have indicated, and applied to current revenues of the state and its respective departments, they are not offensive to Section XIV or to Section 213 of the Constitution of Alabama, as amended. Skinner's Ala.Constitution, Annotated, Art. I, Section XIV, p. 127; Art. XXIII, § XXVI, p. 987.

In the cases of State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 501, 502, 179 So. 541, 117 A.L.R. 498, and Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377, 175 So. 387, the state was, in effect, made a defendant against the provisions of § XIV of the Constitution, and the decisions as to judgments are to be distinguished from the instant case.

The foregoing construction and application of the instant cost statutes, as we have indicated, are not only inoffensive to any provision of the Constitution by which they are tested, but are in accord with the due administration of the original Budget Act (General Acts 1932, Ex.Sess. pp. 35–48) and the amendments thereto. General Acts 1939, p. 198, § 12.

Such judgment cannot be extended to the future but is payable out of the current revenues for the year, where the amount of the costs is ascertained, and out of revenue not otherwise appropriated.

The action being ejectment and the defendant in possession of the land sued for having secured judgment, the judgment against the state for the land was an irregularity that is here corrected. The judgment against the state for costs is in harmony with the Constitution and the statutes, and as corrected, the judgment is affirmed.

The application for rehearing is denied.

ANDERSON, C. J., and GARDNER, BOULDIN, and KNIGHT, JJ., concur.

BROWN and FOSTER, JJ., concur in conclusion.